MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Lorenzo Marinuzzi

*Attorneys for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PAPER INTERNATIONAL, INC., *et al.*, | ) | Case No. 08-13917 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF MOTION OF THE DEBTORS FOR ORDER**
**(I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE**
**JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS**
**PROPOSED BY CORPORACIÓN DURANGO AND THE DEBTORS; (II)**
**APPROVING THE FORM OF BALLOT AND PROPOSED SOLICITATION AND**
**TABULATION PROCEDURES FOR THE PLAN; (III) APPROVING THE**
**SOLICITATION PACKAGES AND PRESCRIBING THE FORM AND MANNER OF**
**NOTICE AND DISTRIBUTION THEREOF; (IV) ESTABLISHING PROCEDURES**
**FOR VOTING IN CONNECTION WITH THE PLAN CONFIRMATION PROCESS;**
**AND (V) SCHEDULING A HEARING ON PLAN CONFIRMATION**

**PLEASE TAKE NOTICE**, that Paper International, Inc. ("Paper International") and its

affiliated debtor and debtor in possession, Fiber Management of Texas, Inc. ("FMT," together

with Paper International, the "Debtors"), have filed the Motion (the "Motion") for entry of an

order (i) approving the Disclosure Statement relating to the Joint Chapter 11 Plan of

Reorganization for the Debtors Proposed by Corporación Durango and the Debtors, dated April

27, 2009 (as may be amended from time to time, the "Disclosure Statement") [Docket No. 150];

(ii) approving the form of ballot and proposed solicitation and tabulation procedures for the Joint

Chapter 11 Plan of Reorganization for Proposed by Corporación Durango and the Debtors, dated

April 27, 2009 (as may be amended from time to time, the "Plan") [Docket No. 149]; (iii)

approving the Solicitation Packages (as such term is defined in the Motion) prescribing the form

and manner of notice and distribution thereof; (iv) establishing procedures for voting in

connection with the Plan confirmation process; and (v) scheduling a confirmation hearing on the

Plan.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors have requested that a hearing

be held to consider the Motion (the "Hearing") on **May 15, 2009 at [__]:[__] [ ].m. (prevailing**

**Eastern time)**[1] before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004,

Room 610.

      **PLEASE TAKE FURTHER NOTICE THAT** responses or objections, if any, to the

Motion and the relief requested therein must be made in writing, conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court, set forth the

basis for the objection and the specific grounds therefor, and be filed with the Bankruptcy Court

electronically in accordance with General Order M-242, as amended by General Order M-269,

by registered users of the Bankruptcy Court's electronic case filing system (the User's manual

for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official

website for the Bankruptcy Court), with a hard copy delivered directly to Chambers and served

in accordance with General Order M-242 or by first-class mail upon each of the following: (i)

counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York,

---

[1]      Concurrently herewith, the Debtors have filed a motion to shorten notice (the "Motion to Shorten"), which seeks authority to shorten notice with respect to the Motion for cause. Through the Motion to Shorten, the Debtors have requested that the Motion be heard at any time on May 15, 2009 and that all objections thereto be filed on or before May 13, 2009 at 4:00 p.m.

New York 10104, Attention: Larren M. Nashelsky, Esq.; (ii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, New York, New York

10004, Attention: Paul K. Schwartzberg, Esq.; (iii) Bingham McCutchen LLP, 399 Park Avenue,

New York, New York 10022-4689, Attn: Michael J. Reilly, Esq., counsel to the Creditors'

Committee; and (iv) all parties that have, pursuant to Bankruptcy Rule 2002, formally appeared

and requested service, so as to be received on or before **4:00 p.m. (prevailing Eastern time) on**

**May __, 2009**,[2] or such shorter time as the Bankruptcy Court may hereafter order and of which

you may receive subsequent notice.

      **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written

objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition

waived, treat the Motion as conceded, and enter an order granting the relief requested in the

Motion without further notice or hearing.

      **PLEASE TAKE FURTHER NOTICE THAT** a copy of the Motion may be obtained at

no charge at http://www.kccllc.net/PaperInternational or for a fee via PACER at

http://www.nysb.uscourts.gov.

---

[2]      As noted above, pursuant to the Motion to Shorten, the Debtors have requested that objections to the Motion be filed on or before May 13, 2009 at 4:00 p.m. The Court has yet to rule on the Motion to Shorten.

Dated: April 27, 2009
New York, New York

Respectfully submitted,

/s/ Lorenzo Marinuzzi
Larren M. Nashelsky
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Attorneys for Debtors and Debtors in Possession*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Lorenzo Marinuzzi

*Attorneys for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PAPER INTERNATIONAL, INC., *et al.*, | ) | Case No. 08-13917 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MOTION OF THE DEBTORS FOR ORDER**
**(I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE**
**JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS**
**PROPOSED BY CORPORACIÓN DURANGO AND THE DEBTORS; (II)**
**APPROVING THE FORM OF BALLOT AND PROPOSED SOLICITATION AND**
**TABULATION PROCEDURES FOR THE PLAN; (III) APPROVING THE**
**SOLICITATION PACKAGES AND PRESCRIBING THE FORM AND MANNER OF**
**NOTICE AND DISTRIBUTION THEREOF; (IV) ESTABLISHING PROCEDURES**
**FOR VOTING IN CONNECTION WITH THE PLAN CONFIRMATION PROCESS;**
**AND (V) SCHEDULING A HEARING ON PLAN CONFIRMATION**

Paper International, Inc. ("Paper International") and its affiliated debtor and debtor in

possession, Fiber Management of Texas, Inc. ("FMT," together with International, the

"Debtors"), by and through their undersigned counsel, hereby submit this Motion (the "Motion")

for entry of an order (i) approving the Disclosure Statement relating to the Joint Chapter 11 Plan

of Reorganization for the Debtors Proposed by Corporación Durango and the Debtors, dated

April 27, 2009 (as may be amended from time to time, the "Disclosure Statement") [Docket No.

150]; (ii) approving the form of ballot and proposed solicitation and tabulation procedures for the

Joint Chapter 11 Plan of Reorganization for Proposed by Corporación Durango and the Debtors,

dated April 27, 2009 (as may be amended from time to time, the "Plan") [Docket No. 149]; (iii) approving the Solicitation Packages (as such term is defined below) prescribing the form and manner of notice and distribution thereof; (iv) establishing procedures for voting in connection with the Plan confirmation process; and (v) scheduling a confirmation hearing on the Plan. In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief requested herein is sections 105, 502, 1125, and 1126 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rules 2002, 3003, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.    The Chapter 11 Filings**

2.    On October 6, 2008 (the "Petition Date"), each of the Debtors filed with the Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the above captioned Chapter 11 Cases (these "Chapter 11 Cases").

3.    Pursuant to an order of this Court dated October 9, 2008, the Debtors' Chapter 11 Cases are being jointly administered.

4.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    On October 10, 2008, this Court entered the Order Pursuant to 28 U.S.C. § 156(c) Appointing Kurtzman Carson Consultants LLC ("KCC") as Claims and Noticing Agent.

6.     On October 20, 2008, the Office of the United States Trustee (the "United States Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these Chapter 11 Cases.  No trustee or examiner has been requested or appointed these Chapter 11 Cases.

7.     On November 20, 2008, each of the Debtors filed their Schedules and Statements of Financial Affairs (collectively, the "Schedules").

8.     KCC is responsible for, among other things, maintaining the database containing the Schedules and maintaining and docketing proofs of claim that are filed in these Chapter 11 Cases.

**B.     The Role of Solicitation and Tabulation Agent**

9.     KCC is responsible for, among other things, maintaining the database containing the Schedules and maintaining and docketing proofs of claim that are filed in these Chapter 11 Cases (the "Claims Registry").  In addition, the Debtors will seek the appointment of AlixPartners LLP ("AlixPartners") as balloting agent of the votes of the Debtors' equity holders on the Plan.  KCC and AlixPartners are collectively referred to as the "Solicitation and Tabulation Agent."

10.     As set forth in the application seeking approval of AlixPartners's retention, there is no duplication of efforts between KCC and AlixPartners: (i) KCC with regard to general noticing and (ii) AlixPartners is responsible for the solicitation and tabulation of votes from Class 3 (Noteholder Claims) contemplated under the Plan together with the distribution of documents with respect thereto.

**C.     The Debtors' Businesses**

11.     Paper International, a corporation organized under the laws of the State of New Mexico, is a wholly-owned direct subsidiary of Durango, a corporation organized under the laws

of Mexico, which maintains its principal place of business in Durango, Mexico. Concurrently with the filing of these Chapter 11 Cases, Durango sought protection from this Court pursuant to Chapter 15 of the Bankruptcy Code in connection with its reorganization case in Mexico, which it also filed on October 6, 2008 under Mexico's *Ley de Concursos Mercantiles* (the "Mexican Business Reorganization Act") in the District Court for Civil Matters for the District of Durango. On December 11, 2008, this Court entered an order granting recognition of Durango's proceeding under the Mexican Business Reorganization Act (the "Concurso Proceeding") as a foreign main proceeding under Chapter 15 of the Bankruptcy Code.

12.     Paper International is a holding company that currently owns 100% of the equity shares in Debtor FMT, a corporation organized under the laws of Texas, as well as 100% of the equity shares in non-debtor Durango McKinley Paper Company, a New Mexico corporation ("McKinley").  Paper International is a holding company which has no employees, no operations, and whose primary assets are its ownership interests in McKinley and FMT.

13.     Before August 2008, FMT's primary business was the procurement of fiber (*i.e.*, paper materials used to manufacture recycled paper products) for use by McKinley and other paper manufacturing affiliates of Durango located in Mexico (the "Mexican Affiliates").  When either McKinley or one of the Mexican Affiliates required fiber for their manufacturing facilities, FMT purchased fiber from third parties and then sorted and stored these materials at several depots (the "Depots") located in New Mexico, Texas, and Arizona, each of which were either owned or leased by McKinley or FMT. FMT then shipped the materials to McKinley's Prewitt, New Mexico facility or to the United States-Mexican border where the Mexican Affiliates accepted the fiber.  In exchange for the procurement of these materials, McKinley and the

Mexican Affiliates paid FMT for the cost of purchasing and shipping the fiber, plus $3.00 per ton of materials delivered.

14.     To operate its fiber procurement operations, FMT did not engage or employ any of its own employees.  Instead, McKinley designated employees to run FMT's operations at the Depots and coordinate and administer its fiber procurement business out of FMT's Arlington, Texas headquarters.  FMT would then pay McKinley for the use of McKinley's employees via an intercompany allocation of those costs.

15.     In August 2008, FMT ceased procuring fiber and began winding up all of its business operations.

**D.      Events Leading to Chapter 11 Cases**

16.     In 2004, Durango initiated reorganization proceedings under the Mexican Business Reorganization Act and a corresponding proceeding in the United States under section 304 of the Bankruptcy Code (the "2004 Proceedings").

17.     As a result of transactions related to the 2004 Proceedings, each of the Debtors became guarantors (the "Senior Notes Guarantees") of senior notes (the "Senior Notes") issued by Durango pursuant to an indenture dated as of October 5, 2007 (the "Indenture"). The Law Debenture Trust Company of New York is the trustee under the Indenture (the "Indenture Trustee").

18.     Unfortunately, the rising cost of energy, coupled with (i) the well-documented downturn in the U.S. economy, (ii) increased foreign competition in the paper industry, and (iii) the devaluation of the Mexican Peso, made it difficult for Durango to transfer its rising costs to its customers.

19.     As a result, Durango was not able to make its scheduled interest payment of approximately $26.5 million on the Senior Notes, which was due on October 6, 2008.  Durango

believed it was in the best interests of the company and its creditors to seek relief under the Mexican Business Reorganization Act in order to preserve its value as a going concern and maximize the value of its assets for the benefit of all creditors.

20.     In addition, as a result of the obligations arising out of the Senior Notes Guarantees, it was similarly in the best interests of the Debtors, their creditors and equity holders to file these Chapter 11 Cases.

## RELIEF REQUESTED AND BASES THEREFOR

21.     By this Motion, the Debtors request the entry of an order (i) approving the Disclosure Statement; (ii) approving the form of ballot and proposed solicitation and tabulation procedures for the Plan; (iii) approving the Solicitation Packages (as such term is defined below) prescribing the form and manner of notice and distribution thereof; (iv) establishing procedures for voting in connection with the Plan confirmation process; and (v) scheduling a confirmation hearing on the Plan (the "Confirmation Hearing").

**A.     Approval of Disclosure Statement**[3]

22.     Section 1125(b) of the Bankruptcy Code requires that a plan proponent provide "adequate information" regarding a debtor's proposed plan of reorganization.  In particular, section 1125(a)(1) of the Bankruptcy Code states:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

---

[3]     Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement.

23.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need in order to make an informed decision whether to vote for or against a chapter 11 plan.  See Century Glove, Inc. v. First Am. Bank of N.Y., 860 F.2d 94, 100 (3d Cir. 1988) (". . . § 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote"); see also In re Monnier Bros., 755 F.2d 1336, 1341 (8th Cir. 1985); In re Phoenix Petroleum, Co., 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); In re Unichem Corp., 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987).  Congress anticipated that such informed judgments would be needed to both negotiate over and vote on a plan of reorganization.  Id.

24.     In examining the adequacy of the information contained in a disclosure statement, the Court has broad discretion.  See In re Cajun Elec. Power Co-op, Inc., 230 B.R. 715, 731 (Bankr. M.D. La. 1999) (citing In re Tex. Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination is largely within the discretion of the bankruptcy court.")); see also In re A.H. Robbins Co., 880 F.2d 694, 698 (4th Cir. 1989); In re Egan, 33 B.R. 672, 674-75 (Bankr. N.D. Ill. 1983).  This discretion provides flexibility and facilitates the effective reorganization of the different types of chapter 11 debtors by accommodating the varying circumstances accompanying chapter 11 cases.  See H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-09 (1977).  Courts evaluate whether a disclosure statement contains adequate information on a case-by-case basis, based on the facts and circumstances of each case.  See Oneida Motor Freight, Inc. v. United Jersey Bank et al., 848 F.2d 414, 417 (3d Cir. 1988); In re Tex. Extrusion Corp., 844 F.2d at 1157; In re A.H. Robbins Co., 880 F.2d at 698; see also In re U.S. Brass Corp., 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing factors courts have considered in determining the

adequacy of information provided in a disclosure statement); <u>In re Scioto Valley Mortgage Co.</u>, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (same).

25.     The determination should take account of expertise and resources, including outside advisors and relevant information already possessed or publicly available, of the hypothetical investor of each class of claims or interests from which classes the acceptance or rejection of the Plan is solicited after the commencement of the cases.  <u>See</u> <u>In re Zenith Elec.</u> <u>Corp.</u>, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999).

26.     The Debtors' Disclosure Statement is the product of the Debtors' extensive review and analysis of the circumstances leading to the Chapter 11 Cases, the Chapter 11 Cases themselves, the Concurso Proceeding and a thorough analysis of the Plan.  In drafting the Disclosure Statement, the Debtors sought the assistance and input of their financial and legal advisors.  The Debtors also prepared the Plan and Disclosure Statement with substantial input from the Noteholder Steering Committee and the Ad Hoc Noteholder Group.  Moreover, the Debtors, throughout the course of the Chapter 11 Cases, have continued to provide substantial information to various parties and their retained professionals, including, but not limited to, the parties to the Plan Support Agreement.

27.     The Disclosure Statement contains, or will contain prior to solicitation, the pertinent information necessary for holders of Class 3 (Noteholder Claims) to make an informed decision about whether to vote to accept or reject the Plan, including, among other things, information regarding (a) the Plan; (b) the history of the Debtors, including certain events leading to the commencement of the Chapter 11 Cases; (c) the operation of the Debtors' businesses and significant events during the Cases; (d) the Debtors' prepetition capital structure and indebtedness; (e) the Debtors' corporate structure; (f) claims asserted against the Debtors'

estates and the procedures for the resolution of disputed, contingent, and unliquidated claims or

equity interests; (g) certain risk factors to consider that may affect the Plan; (h) the restructuring

transactions contemplated by the Plan; (i) a liquidation analysis and other financial information;

(j) the contemplated administration of the Debtors' estates following confirmation of the Plan;

(k) certain securities law and federal income tax law consequences of the Plan; (l) the regulatory

environment in which the Debtors operate; (m) the classification and treatment of claims and

equity interests; (n) the provisions governing distribution under the Plan; (o) the means for

implementation of the Plan; and (p) the treatment of material litigation.

28.     The Debtors respectfully submit that the Disclosure Statement complies with all

aspects of section 1125 of the Bankruptcy Code.  The Debtors will demonstrate at the Disclosure

Statement hearing that the Disclosure Statement addresses the information set forth above in a

manner that provides holders of impaired claims that are entitled to vote to accept or reject the

Plan with adequate information within the meaning of section 1125 of the Bankruptcy Code and

should therefore be approved.

## B.     The Proposed Procedures for Voting

29.     The Debtors request approval of the proposed voting procedures described below

in order for the Debtors to conduct an effective and efficient solicitation of votes to accept or

reject the Plan that is consistent with the requirements of the Bankruptcy Code, the Bankruptcy

Rules and due process (the "Voting Procedures"):

> a.      if a claim is deemed allowed pursuant to the Plan, then such
> claim shall be allowed for voting purposes in the amount
> and classification deemed allowed in the Plan;
>
> b.      except as otherwise provided herein and unless temporarily
> allowed for voting purposes by the Court, if a filed proof of
> claim asserts a claim in a wholly undetermined or
> unliquidated amount or is docketed in the Claims Registry
> as of the Record Date (as defined herein) in the amount of

$0, then such claim shall be allowed for voting purposes as a General Unsecured Claim only in the amount of $1.00;

c.       except as otherwise provided herein and unless temporarily allowed for voting purposes by the Court, if a filed proof of claim asserts a claim in a partially undetermined or unliquidated amount, then such claim shall be allowed for voting purposes only in the amount of the known or liquidated portion of the claim;

d.       if a claim has been estimated by an order of the Court, then such claim will be allowed for voting purposes in the amount approved by the Court, provided that such order is entered on or before such date and time set forth in the Disclosure Statement order, Prevailing Eastern Time (the "Voting Deadline");

e.       unless temporarily allowed for voting purposes by the Court or the Debtors have consented in writing, if a claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable Bar Date for the filing of proofs of claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, then such claim shall be disallowed for voting purposes;

f.       notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to the entirety of a claim on or before the date of the entry of the Disclosure Statement order and (ii) the claim has not been temporarily allowed for voting purposes by the Court, then such claim shall be disallowed for voting purposes;

g.       notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to a portion of a claim or equity interest on or before the date of the entry of the Disclosure Statement order and (ii) such portion of the claim or equity interest has not been temporarily allowed for voting purposes by the Court, then the claim shall be allowed for voting purposes only in the undisputed amount that is set forth in the pending objection;

h.       notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to the

classification of all or part of a claim on or before the date of the entry of the Disclosure Statement order (including any requests to subordinate such claim) and (ii) such claim has not been temporarily allowed for voting purposes by the Court, then the claim shall be allowed for voting purposes only in the amount and classification that is set forth in the pending objection (if any);

i.      unless such claim has been temporarily allowed for voting purposes by the Court or otherwise allowed as to all or part of the claim, if the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to a proof of claim based upon the claim being asserted against the wrong debtor, then the claim shall be allowed for voting purposes only in the undisputed amount and against the Debtor as set forth in the pending objection;

j.      unless otherwise provided by an order of the Court, the allowed amount of any proof of claim for voting purposes shall be the amount as docketed in the Claims Registry as of the Record Date;

k.      unless otherwise provided by an order of the Court or otherwise provided herein, for purposes of determining eligibility to vote, the classification of a claim shall be determined based on the classification as docketed in the Claims Registry as of the Record Date; provided, however, that any claims for which KCC is unable to identify the classification shall be classified as General Unsecured Claims;

l.      unless temporarily allowed for voting purposes by the Court, if a single proof of claim has been filed against multiple Debtors (in contravention of the Bar Date Notice), then such claim shall be allowed for voting purposes only against the Debtor as docketed in the Claims Registry as of the Record Date;

m.      if a claim is allowed pursuant to a Court-approved settlement (except for a claim or equity interest that is temporarily allowed by the Court, which claim may vote so long as such order temporarily allowing the claim is entered by the Voting Deadline) on or before ten (10) days prior to the Voting Deadline, then such claim will be entitled to vote on the Plan in accordance with the terms of such settlement;

n.   unless temporarily allowed for voting purposes by the Court, if (i) a proof of claim was filed after the applicable Bar Date, (ii) the creditor did not obtain leave to file such late claim, and (iii) the proof of claim is not docketed in the Claims Registry as of the Record Date as an amendment of a timely filed claim, then such claim shall be disallowed for voting purposes;

o.   unless otherwise temporarily allowed for voting purposes by the Court, if a proof of claim does not list a Debtor or the Debtor is unidentifiable on the proof of claim, then such claim shall be disallowed for voting purposes;

p.   unless otherwise temporarily allowed for voting purposes by the Court, if a claim is disallowed pursuant to section 502(d) of the Bankruptcy Code or is equitably subordinated under the Bankruptcy Code, then such claim shall be disallowed for voting purposes;

q.   if the Debtors schedule a claim and the creditor filed a proof of claim superseding such scheduled claim, the scheduled claim is deemed superseded in accordance with Bankruptcy Rule 3003(c)(4) and such scheduled claim shall be disallowed for voting purposes; and

r.   in addition to the foregoing, the Debtors may seek an order of the Court disallowing a claim for voting purposes at anytime prior to the commencement of the Confirmation Hearing.

30.   Many claims asserted against the Debtors are unimpaired under the Plan and therefore not entitled to vote on the Plan. Nothing contained in this Motion shall constitute a waiver of the Debtors' right to file an objection to such claims, or any other claims, based on the amount, classification, or validity of such claims.

31.   To the extent that a creditor has a question as to how its claim is docketed by KCC as of the Record Date, such creditor may access publicly available information via the internet at KCC's website located at http://www.kccllc.net/PaperInternational. KCC is responsible for, among other things, maintaining the database containing the Schedules and maintaining and docketing proofs of claim that are filed in these Chapter 11 Cases. KCC will

continue to update the database available on its website until the Record Date. Creditors are only entitled to vote their claims as docketed on KCC's website as of the Record Date in accordance with the Voting Procedures, unless otherwise ordered by the Court.

32.     The foregoing Voting Procedures are subject to change and may be amended at any time on or before the Disclosure Statement Hearing. These Voting Procedures, including any amendment thereto, will be submitted for Court approval at the Disclosure Statement hearing and will be incorporated into the voting instructions to be included with each Ballot. The Debtors believe that the proposed Voting Procedures provide for a fair and equitable voting process.

**C.     Proposed Solicitation Procedures**

33.     The procedures set forth herein are based upon the proposed Plan and Disclosure Statement as filed concurrently herewith.

i.      Record Date For The Holders Of Claims And Equity Interests

34.     Bankruptcy Rule 3017(d) provides that, for the purposes of transmission of a plan and disclosure statement, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record at the date the order approving the disclosure statement is entered." Bankruptcy Rules 3017(d) and 3018(a) provide that the record date for solicitation of holders of such claims and equity interests is the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing.

35.     The Debtors believe that the fixing of a record date on the date the Disclosure Statement order is entered will not provide the Debtors with adequate time to solicit certain claimants prior to the Plan confirmation hearing (the "Confirmation Hearing"). In order to set a record date, the record holders of the Notes need advance notice to enable those responsible for

assembling ownership lists of the Debtors' public securities to compile a list of holders as of a date certain.

36.     Prior to the solicitation of votes, the Debtors must finalize the list of creditors to be solicited, print individualized ballots and master ballots, prepare the Solicitation Packages (as defined below), mail the Solicitation Packages, finalize the list of non-voting parties in interest to be notified, print the notices, prepare the mailing and mail the notices. To accomplish these tasks, the Debtors must coordinate with the agents of holders of public securities to ensure that Solicitation Packages and ballots or notices (as may be appropriate) are sent to the beneficial holders.

37.     In consultation with the Solicitation and Tabulation Agent, the Debtors have been advised that it may require up to ten (10) days to obtain and process the appropriate creditor data from various sources to prepare for the mailing.  Once processed, the Debtors have been further advised that it will require additional time to generate the appropriate mailing labels or personalized ballots as may be appropriate.  The Debtors believe that cause exists to fix the record date under Bankruptcy Rules 3017(d) and 3018(a) for a date earlier than the date the Disclosure Statement Order is actually entered by the Court.  Accordingly, based upon the current anticipated date of the Confirmation Hearing, the Debtors request that the record date be fixed as May 1, 2009 (the "Record Date").  The establishment of this Record Date is for transmission purposes only and shall have no preclusive effect with regard to who is entitled to receive distributions under the Plan.

38.     With respect to the Record Date, the Debtors propose that the record holders of the Noteholder Claims be determined based upon the records of the relevant transfer agent, as well as the records of The Depository Trust Company ("DTC") and the applicable Voting

Nominee as of the Record Date. Accordingly, any notices of claim transfers received by the record holders of the public securities, KCC or other similarly situated registrars after the Record Date shall not be recognized for purposes of voting.

**D.     The Proposed Form of Ballot**

39.     Each claim will be voted and tabulated on a non-consolidated basis by Debtor groups or as otherwise set forth in the Plan. The Debtors request that the Court enter the Disclosure Statement order approving the form of Ballot and Master Ballot for accepting or rejecting the Plan in substantially the form attached to the proposed order annexed hereto (the "Proposed Order") as collective Exhibit "A-1" and "A-2" (the "Ballots").

40.     Bankruptcy Rule 3018(c) provides, in relevant part, as follows:

> Form of Acceptance or Rejection. An acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate official form.

Fed. R. Bankr. P. 3018(c). Bankruptcy Rule 3018(c) provides that ballots for accepting or rejecting the Plan should conform substantially to Official Form No. 14. The Debtors propose to use the form of Ballots for accepting or rejecting the Plan. The Ballots are based upon Official Form No. 14 but have been modified to provide clear instructions to the Debtors' creditors as to voting procedures, the vote tabulation process and the effects of casting particular Ballots. The Debtors believe that placing this important information on the Ballots will inure to the benefit of those creditors entitled to vote. The Debtors submit that these modest modifications to the Official Form are necessary to ensure the accuracy, completeness and timeliness of voting on the Plan.

41.     As part of the solicitation process, the Debtors intend to solicit votes from the holders of Allowed Noteholder Claims entitled to vote directly on the Plan. Because of the

complexity and difficulty associated with reaching the beneficial holders of the Noteholder Claims, many of which hold their securities in brokerage accounts and/or through several layers of ownership, the Debtors propose that the Solicitation Packages be sent in a manner customary in the securities industry so as to maximize the likelihood that beneficial holders of the Noteholder Claims will receive the materials in a timely fashion.

42.     The balloting process for the Noteholder Claims is multiple-tiered because the Debtors need to solicit votes through the broker, dealer or other agents or nominees (collectively, the "Voting Nominees") for the ultimate beneficial holders of the claims or interests (collectively, the "Beneficial Holders").  The Voting Nominees' role varies depending upon the terms and provisions of governing documents and applicable law.  As a general rule, the Voting Nominees will submit the Beneficial Holders' voting information to the Solicitation and Tabulation Agent (either directly through a Master Ballot or indirectly through pre-validation of the Ballots).

43.     Following receipt of the Solicitation Packages, the Debtors propose that the Voting Nominees for the Noteholder Claims have two options with respect to voting the Ballots and Master Ballots: (a) the Voting Nominee can forward the Solicitation Package to each Beneficial Holder (containing the Ballot set forth in Exhibit "A-1" to the Proposed Order) entitled to vote on the Plan within five (5) business days of the receipt by such Voting Nominee of the Solicitation Package and include a return envelope provided by, and addressed to, the Voting Nominee to enable the Beneficial Holder to return the completed Ballot to the Voting Nominee, with the Voting Nominee then tabulating the votes and submitting a Master Ballot (substantially in the form attached hereto as Exhibit "A-2" to the Proposed Order) to the Solicitation and Tabulation Agent; or (b) if applicable under the governing documents, the

Voting Nominee can "pre-validate" the Ballots and forward the Solicitation Package (containing the Ballot set forth in Exhibit "A-1" to the Proposed Order) to each Beneficial Holder entitled to vote on the Plan within five (5) business days of the receipt by such Voting Nominee of the Solicitation Package and include a return envelope postage pre-paid provided by, and addressed to, the Solicitation and Tabulation Agent.  To "pre-validate" a Ballot, the Voting Nominee should execute the Ballot and indicate on the Ballot the name of the registered holder, the amount of securities held by the Voting Nominee for the Beneficial Holder and the account number(s) for the account(s) in which such securities are held by the Voting Nominee, and the Beneficial Holder shall return the completed pre-validated Ballot to the Solicitation and Tabulation Agent by the Voting Deadline.

44.     To facilitate the Voting Nominees' solicitation of votes of the Beneficial Holders and submission of the appropriate Master Ballot(s) and/or pre-validated Ballots to the Solicitation and Tabulation Agent, unless otherwise instructed, in writing, by a Voting Nominee, the Debtors propose to provide each Voting Nominee with a reasonably sufficient number of Solicitation Packages (including Ballots) to distribute to the Beneficial Holders of the claims for whom such Voting Nominee acts.

45.     The procedures described herein adequately (a) recognize the complex nature of the Debtors' prepetition debt structure and the complexities of the securities industry, (b) enable the Debtors to transmit the Solicitation Packages to the Beneficial Holders, and (c) afford the Beneficial Holders a fair and reasonable opportunity to vote.

46.     The Debtors have acted in good faith in identifying all of the Noteholder Claims that require multiple-tier voting procedures.

47.     Section 7.14 of the Plan contemplates releases by holders of Allowed Claims. Each of the Ballots sent to creditors entitled to vote shall provide the option for a written opt-out of the contemplated releases.

48.     Accordingly, the Debtors propose that each holder of Noteholder Claim entitled to vote on the Plan, other than the members of the Committee, the Noteholder Steering Committee and the Ad Hoc Noteholder Group who executed the Plan Support Agreement, may elect on its Ballot not to grant the releases contained in Section 7.14 of the Plan (the "Opt-Out Election") as they relate to the opt-out release parties set forth in Section 7.14 of the Plan. If a Ballot is submitted without such Opt-Out Election, then the holder of such Claim shall be deemed to consent to the releases contained in Section 7.14 of the Plan to the fullest extent permitted by applicable law.

## E.     Solicitation Packages and Distribution Procedures

49.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for purposes of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization. Specifically, Bankruptcy Rule 3017(d) provides in part that:

> Upon approval of a disclosure statement – except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders – the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case, shall transmit to the United States Trustee:
>
> (1)     the plan or a court approved summary of the plan;
>
> (2)     the disclosure statement approved by the court;
>
> (3)     notice of the time within which acceptances and rejections of such plan may be filed; and
>
> (4)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders pursuant to Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

50.     Following approval of the Disclosure Statement, the Debtors propose to distribute or cause to be distributed solicitation packages (the "Solicitation Packages") to the voting class containing copies of:

  a.     the Disclosure Statement Order;

  b.     the applicable Ballot(s), substantially in the forms attached to the Proposed Order as Exhibits "A-1" and "A-2," together with the voting instructions, substantially in the forms attached to the Proposed Order as Exhibit "B," and a pre-addressed postage pre-paid return envelope; and

  c.     the applicable confirmation hearing notice, substantially in the form attached to the Proposed Order as Exhibits "C" and "D" (the "Confirmation Hearing Notice");

  d.     either (i) a CD-ROM containing the Disclosure Statement (together with the Plan attached thereto) or (ii) a hard copy of the Disclosure Statement (together with the Plan attached hereto).

51.     The Debtors propose to mail the Solicitation Packages by no later than five (5) business days after entry of order granting this Motion absent relief from the Court (the "Solicitation Date") to:

  a.     subject to subsection (c) below, record holders of scheduled claims, as of the Record Date, to the extent that such claims (i) are listed in the Debtors' Schedules in an amount greater than zero and are not identified as contingent, unliquidated or disputed, (ii) have not been superseded by a timely filed claim, and (iii) entitle the holder thereof to vote on the Plan;

  b.     subject to subsection (c) below, record holders of timely filed claims, as of the Record Date, to the extent that such

claims (i) are the subject of timely filed proofs of claim, (ii) have not been disallowed, expunged, disqualified or suspended prior to the Record Date, (iii) are not the subject of a pending objection as of the date set forth in the Disclosure Statement Order unless, notwithstanding being the subject of an objection, the Voting Procedures entitle such claimant to vote on the Plan in the manner set forth in the Voting Procedures, and (iv) entitle the holders thereof to vote on the Plan;

c.      with respect to debt securities, the record holders of claims or equity securities, as of the Record Date, to the extent that the holders of such debt security claims are entitled to vote on the Plan; and

d.      all parties requesting notice pursuant to Bankruptcy Rule 2002 and any taxing authorities to which the Debtors' operations are subject.

52.     To facilitate the distribution described herein to the Beneficial Holders, the Debtors request that the Court order each of the Voting Nominees to distribute Solicitation Packages to the respective Beneficial Holders within five (5) business days of the Voting Nominee's receipt of the Solicitation Packages.

53.     As set forth above, the Debtors propose to include in the Solicitation Packages a CD-ROM containing the Disclosure Statement and exhibits thereto, including the Plan, which is attached as Exhibit "A" to the Disclosure Statement.  The Disclosure Statement, including its exhibits, is in excess of 70 pages.  Accordingly, to reduce administrative costs associated with printing and mailing this voluminous document, the Debtors propose to serve it via CD-ROM. In addition, the Plan and Disclosure Statement will be available via the Internet at http://www.kccllc.net/PaperInternational or via PACER at http://www.nysb.uscourts.gov. However, if service by CD-ROM imposes a hardship for any creditor (e.g., the creditor does not own or have access to a computer or the Internet), the Debtors, upon written request, will deliver

by first class mail a paper copy of the Plan and Disclosure Statement at no cost to the creditor or equity holder within five (5) business days of receipt of such request.

54.     In addition, the Debtors shall distribute or cause to be distributed by the Solicitation Date, the Solicitation Package without (i) a Ballot, (ii) voting instructions or (iii) a return envelope to (a) the U.S. Trustee; (b) the attorneys for the Creditors' Committee; (c) the attorneys for the Noteholder Steering Committee; (d) the attorneys for the Ad Hoc Noteholder Group; (e) the Securities and Exchange Commission; (f) the District Director of the Internal Revenue Service; (g) the Department of Justice; and (g) all counterparties to the Debtors' executory contracts and unexpired leases.

55.     The Debtors request authority to reimburse any reasonable and customary out-of-pocket expenses incurred by DTC, brokerage firms, or transfer agent identified in connection with the distribution of the Solicitation Packages.

56.     In the past, some notices of the applicable claims Bar Dates have been returned by the United States Postal Service as undeliverable.  Similarly, the Debtors anticipate that some of the Disclosure Statement Notices may be returned by the United States Postal Service as undeliverable.  The Debtors believe that it would be costly and wasteful to distribute Solicitation Packages to the same addresses to which undeliverable mailings were previously sent.

57.     Therefore, in an effort to conserve these estates' resources, the Debtors seek the Court's approval for a departure from the strict notice rule, to the extent possible, excusing the Debtors from distributing Solicitation Packages to those entities listed at such addresses unless the Debtors receive written notice of accurate addresses for such entities prior to the hearing to consider approval of the proposed Disclosure Statement.

58.     In addition, the Debtors propose the following additional procedures with respect

to the solicitation of votes on the Plan:

- **Publication Notice**:

  Not less than [twenty (20)] days prior to the Plan Objection Deadline, the Debtors will cause the Confirmation Hearing Notice to be published once in <u>The New York Times</u> (National Edition).  Additionally, the Debtors will publish the Confirmation Hearing notice electronically at <u>http://www.kccllc.net/PaperInternational</u>.

- **Return of Ballots**:

  Each claimant that has a Claim for which a Claim amount may be determined and which Claim is not treated as unimpaired under the Plan as of the Voting Deadline is entitled to vote to accept or reject the Plan.  All Ballots will be accompanied by return postage pre-paid envelopes addressed to the Debtors' tabulation center (the "Ballot Tabulation Center"), with the exception of any Beneficial Holder Ballot, which must be returned as outlined in the applicable Ballot.  All Ballots, except for Beneficial Holder Ballots, must be <u>actually</u> <u>received</u> at the Debtors' Ballot Tabulation Center by the Voting Deadline.  Beneficial Holder Ballots that are not pre-validated must be returned to the Voting Nominee in sufficient time for the Voting Nominee to process the Beneficial Holder Ballots and return the Master Ballot to the Debtors' Ballot Tabulation Center by the Voting Deadline.  If Ballots and Master Ballots are not <u>actually</u> <u>received</u> at the Debtors' Ballot Tabulation Center by the Voting Deadline, they will not be counted.

- **Solicitation and Tabulation Agent**:

  The Debtors will be using AlixPartners for purposes of distributing Solicitation Packages and tabulating votes on the Plan.  The Solicitation and Tabulation Agent will be responsible for the distribution of Solicitation Packages to, and tabulation of Ballots received from, the entities such agents solicited.

- **Inquiries**:

  All inquiries related to the Plan, the Disclosure Statement, and the Voting Procedures should be directed to the Solicitation and Tabulation Agent at the phone number set forth on the appropriate Ballot.

## F.     <u>Notice Of Non-Voting Status</u>

59.     Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

    If the court orders that the disclosure statement and the plan or a
    summary of the plan shall not be mailed to any unimpaired class,

> notice that the class is designated in the plan as unimpaired and
> notice of the name and address of the person from whom the plan
> or summary of the plan and disclosure statement may be obtained
> upon request and at the plan proponent's expense, shall be mailed
> to members of the unimpaired class together with the notice of the
> time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).

60.     The claims in Class 1 (Priority Claims), Class 2 (General Unsecured Claims), and Class 4 (Equity Interests) are unimpaired and, thus, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The Debtors propose to send to such holders of unimpaired claims in the Non-Voting Classes a notice of nonvoting status, substantially in the form attached to the Proposed Order as Exhibit "D" (the "Notice of Non-Voting Status – Unimpaired Classes"), which identifies the classes designated as unimpaired, informs the claimant of the Confirmation Hearing date and the Plan Objection Deadline and sets forth that a copy of the Plan and Disclosure Statement may be obtained <u>via</u> the Internet at http://www.kccllc.net/PaperInternational, or via PACER at http://www.nysb.uscourts.gov , or CD-ROM upon written request to the Debtors, as therein provided.  The Debtors submit that such notice satisfies the requirements of Bankruptcy Rule 3017(d), and accordingly, request that the Court direct that CD-ROMs containing copies of the Disclosure Statement and exhibits thereto, including the Plan, which is attached as Exhibit "A" to the Disclosure Statement, need not be mailed to any holder of an unimpaired claim unless such party makes a specific request in writing for the same.

**G.     The Proposed Procedures for Tabulation**

61.     To augment the Voting Procedures and facilitate the tabulation of votes on the Plan, the Debtors propose the following procedures (the "Tabulation Procedures"):

a.      Votes will be tabulated both on an individual debtor basis for each relevant class and on a consolidated basis for each relevant class.

b.      A vote shall be disregarded if the Court determines, after notice and a hearing, that a vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

c.      Any Ballot that is returned to the Solicitation and Tabulation Agent, but which is unsigned, or has a non-original signature, shall not be counted, unless otherwise ordered by the Court.

d.      All votes to accept or reject the Plan must be cast by using the appropriate Ballot and in accordance with the voting instructions and/or as set forth on the Ballot (as may be applicable).  Votes that are cast in any other manner shall not be counted, unless otherwise ordered by the Court.

e.      If multiple Ballots are received for a holder of claims voting the same claims, the last Ballot received, as determined by the Solicitation Agent or the Tabulation Agent, as the case may be, from such holder prior to the Voting Deadline will be the Ballot that is counted.

f.      If multiple Ballots are received from different holders purporting to hold the same claim, in the absence of contrary information establishing which claimant or holder held such claim as of the Record Date, the last Ballot received prior to the Voting Deadline will be the Ballot that is counted.

g.      If multiple Ballots are received from a holder of a claim and someone purporting to be his, her, or its attorney or agent, the Ballot received from the holder of the claim will be the Ballot that is counted, and the vote of the purported attorney or agent will not be counted, unless otherwise ordered by the Court.

h.      A Ballot that is completed, but on which the claimant did not indicate whether to accept or reject the Plan or that indicates both an acceptance and rejection of the Plan shall not be counted, unless otherwise ordered by the Court.

i.      Any Ballot (except a Master Ballot) that partially accepts and partially rejects the Plan shall not be counted, unless otherwise ordered by the Court.

j.	A holder of claims shall be deemed to have voted the full amount of its claim and shall not be entitled to split its vote.

k.	The Solicitation and Tabulation Agent shall not tabulate a vote by facsimile, telecopy transmission or electronic mail, unless otherwise ordered by the Court.

l.	For the purpose of voting on the Plan, the Solicitation and Tabulation Agent will be deemed to be in constructive receipt of any Ballot timely delivered to any address or designee that the Solicitation and Tabulation Agent designates for the receipt of Ballots cast on the Plan.

62.	The Debtors further request that the order entered by the Court provide that any entity entitled to vote to accept or reject the Plan may change its vote before the Voting Deadline by casting a superseding Ballot so that the superseding Ballot is received by the Solicitation and Tabulation Agent on or before the Voting Deadline.  Unless otherwise agreed to by the Debtors, entities desiring to change their votes after the Voting Deadline may do so only with approval of the Court for "cause" pursuant to Bankruptcy Rule 3018(a) by filing a motion with the Court on or before the plan objection deadline (the "Plan Objection Deadline") so that it may be heard and considered at the Confirmation Hearing.

63.	With respect to Master Ballots submitted by Voting Nominees and/or pre-validated Ballots submitted by or through the Voting Nominees, the Debtors request that the Court direct as follows:

a.	all Voting Nominees to which Beneficial Holders return their Ballots shall summarize on the Master Ballot all Ballots cast by the Beneficial Holders and return the Master Ballot to the Solicitation and Tabulation Agent; provided, however, that each Voting Nominee shall be required to retain the Ballots cast by the respective Beneficial Holders for inspection for a period of at least one (1) year following the Voting Deadline;

b.	votes cast by the Beneficial Holders through a Voting Nominee by means of a Master Ballot or pre-validated Ballot shall be applied against the positions held by such

Voting Nominee as evidenced by a list of record holders provided by DTC and compiled as of the Record Date; provided, however, that votes submitted by a Voting Nominee on a Master Ballot or pre-validated Ballot shall not be counted in excess of the position maintained by such Voting Nominee as of the Record Date;

c.     to the extent that there are over-votes submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballot, the Solicitation and Tabulation Agent will attempt to reconcile discrepancies with the Voting Nominee;

d.     to the extent that over-votes on a Master Ballot or pre-validated Ballot are not reconciled prior to the preparation of the vote certification, the Solicitation and Tabulation Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept or reject the Plan submitted on the Master Ballot or pre-validated Ballot that contained the over-vote, but only to the extent of the position maintained by such Voting Nominee as of the Record Date;

e.     multiple Master Ballots may be completed by a single Voting Nominee and delivered to the Solicitation and Tabulation Agent and such votes shall be counted, except to the extent that such votes are inconsistent with or are duplicative of other Master Ballots, in which case the latest dated Master Ballot received before the Voting Deadline shall supersede and revoke any prior Master Ballot; and

f.     each Beneficial Holder shall be deemed to have voted the full amount of its claim, notwithstanding anything to the contrary in the Ballot submitted by such Beneficial Holder.

64.     The foregoing Tabulation Procedures are subject to change and may be amended at any time on or before the Disclosure Statement Hearing. These Tabulation Procedures, including any amendment thereto, will be submitted for Court approval at the Disclosure Statement Hearing and will be incorporated into the voting instructions to be included with each Ballot. The Debtors believe that the proposed Tabulation Procedures provide for a fair and equitable voting process.

65.     The Debtors believe that the foregoing proposed procedures embody an orderly and logical method for soliciting and tabulating the Ballots of those parties entitled to vote as is contemplated by the Bankruptcy Code and Bankruptcy Rules.  In addition, such procedures are consistent with those used in other chapter 11 cases.  <u>See, e.g.</u>, <u>In re Enron Corp.</u>, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 9, 2004); <u>In re Premium Papers Holdco, LLC</u>, Case No. 06-10110 (CSS) (Bankr. D. Del. Nov. 22, 2006); <u>In re RNI Wind Down Corp.</u>, Case No. 06-10110 (CSS) (Bankr. D. Del. Aug. 9, 2006); <u>In re J.L. French Auto. Castings, Inc.</u>, Case No. 06-10119 (MFW) (Bankr. D. Del. May 12, 2006); <u>see also</u> <u>In re SeraCare Life Sciences, Inc.</u>, Case No. 06-00510-LA11 (Bankr. S.D. Cal. Dec. 21, 2006; <u>In re Mirant Corp.</u>, Case No. 03-46590 (DML) (Bankr. N.D. Tex. Sept. 30, 2005).  The Debtors submit that the Tabulation Procedures are fair and serve to clarify any potential ambiguities that may arise in the voting process.  Accordingly, the Debtors request that the Court approve the Tabulation Procedures.

## H.     Notice Of Scheduling The Confirmation Hearing

66.     Bankruptcy Rule 2002(b) and (d) requires not less than twenty-five (25) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan.  However, contemporaneously herewith the Debtors have requested this Court shorten the notice period.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide to all creditors entitled to receive notice as of the Record Date a copy of either (i) the Confirmation Hearing Notice, setting forth (a) the date of approval of the Disclosure Statement; (b) the Record Date; (c) the Voting Deadline; (d) the Plan Objection Deadline; and (e) the time, date, and place for the Confirmation Hearing, or (ii) the applicable Notice of Non-Voting Status, setting forth (a) the date of approval of the Disclosure Statement; (b) the Plan Objection Deadline; and (c) the time, date, and place for the

Confirmation Hearing.  Such notices will be sent contemporaneously with the Solicitation

Packages.

67.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it

finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R.

Bankr. P. 2002(l).  As set forth above, in addition to mailing the Confirmation Hearing Notice,

the Debtors propose to publish the Confirmation Hearing Notice, not less than [twenty (20)] days

before the Plan Objection Deadline in The New York Times (National Edition).  Additionally,

the Debtors will publish the Confirmation Hearing Notice electronically at

http://www.deb.uscourts.gov and http://www.kccllc.net/PaperInternational.  The Debtors believe

that publication of the Confirmation Hearing Notice will provide sufficient notice of the approval

of the Disclosure Statement, the Record Date, the Voting Deadline, Plan Objection Deadline, and

the time, date, and place of the Confirmation Hearing to persons who do not otherwise receive

notice by mail as provided for in the Disclosure Statement Order.

68.     The Debtors submit that the foregoing procedures will provide adequate notice of

the Confirmation Hearing and, accordingly, request that the Court approve such notices as

adequate and approve the forms of notice of the Confirmation Hearing in substantially the form

attached to the Proposed Order as Exhibit "C" and "D".

69.     The relief sought herein is necessary to the efficient prosecution of the Debtors'

Cases and the chapter 11 plan process while providing adequate notice to, and otherwise

protecting the rights of, the Debtors' creditors and other parties in interest in the Debtors' cases.

## NOTICE

70.     A copy of this Motion has been provided by first-class mail, postage pre-paid to:

(a) the Office of the United States Trustee for the Southern District of New York; (b) White &

Case LLP, counsel to Corporación Durango S.A.B. de C.V; (c) Bingham McCutchen LLP, 399 Park Avenue, New York, New York 10022-4689, Attn: Michael J. Reilly, counsel to the Creditors' Committee; and (d) all parties that have, pursuant to Bankruptcy Rule 2002, formally appeared and requested service. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary

## NO PRIOR REQUEST

71.      No prior request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court: (a) enter an Order substantially in the form annexed hereto granting the relief requested herein; and (b) grant such other and further relief as the Court may deem just and proper.

Dated:   April 27, 2009
         New York, New York

Respectfully submitted,

/s/ Lorenzo Marinuzzi
Larren M. Nashelsky
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PAPER INTERNATIONAL, INC., *et al.*, | ) | Case No. 08-13917 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE
JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS
PROPOSED BY CORPORACIÓN DURANGO AND THE DEBTORS; (II)
APPROVING THE FORM OF BALLOT AND PROPOSED SOLICITATION AND
TABULATION PROCEDURES FOR THE PLAN; (III) APPROVING THE
SOLICITATION PACKAGES AND PRESCRIBING THE FORM AND MANNER OF
NOTICE AND DISTRIBUTION THEREOF; (IV) ESTABLISHING PROCEDURES
FOR VOTING IN CONNECTION WITH THE PLAN CONFIRMATION PROCESS;
AND (V) SCHEDULING A HEARING ON PLAN CONFIRMATION**

Upon the record of the hearing held on May 15, 2009 (together, the "Disclosure

Statement Hearing") to consider (a) the approval of the Disclosure Statement relating to the Joint

Chapter 11 Plan of Reorganization for the Debtors Proposed by Corporación Durango and the

Debtors, dated April 27, 2009 (as may be amended from time to time, the "Disclosure

Statement") [Docket No. 150] and (b) the motion dated April 27, 2009 (the "Motion") of Paper

International, Inc. and its affiliated debtor and debtor in possession, Fiber Management of Texas,

Inc. (collectively, the "Debtors") for entry of an order (i) approving the Disclosure Statement; (ii)

approving the form of ballot and proposed solicitation and tabulation procedures for the Joint

Chapter 11 Plan of Reorganization for Proposed by Corporación Durango and the Debtors, dated

April 27, 2009 (as may be amended from time to time, the "Plan") [Docket No. 149]; (iii)

approving the Solicitation Packages (as such term is defined in the Motion) prescribing the form

and manner of notice and distribution thereof; (iv) establishing procedures for voting in

connection with the Plan confirmation process; and (v) scheduling a confirmation hearing on the Plan; and objections, if any, having been either overruled or otherwise resolved as reflected on the record of the Disclosure Statement Hearing; and it appearing that the Court has jurisdiction over this matter; and due and proper notice of the Disclosure Statement, the Disclosure Statement Hearing and the Motion having been given; and it appearing that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their Estates, their creditors and equity interest holders; and upon the record of the Disclosure Statement Hearing and all the proceedings had before the Court; and the Court having determined after due deliberation that the Disclosure Statement contains adequate information, as such term is defined in section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101, et. seq. (the "Bankruptcy Code"); and sufficient cause appearing therefor, it is hereby

ORDERED that, in accordance with section 1125 of the Bankruptcy Code and Rule 3017(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement is hereby approved substantially in the form as amended and modified on [_____] and as may be modified by agreement between the Debtors, the Committee, the Noteholder Steering Group and the Ad Hoc Noteholder Committee; and it is further

ORDERED that, in accordance with Bankruptcy Rule 3017(c), the date and time set as the deadline for voting on the Plan shall be [June 1, 2009] at 4:00 p.m., Prevailing Eastern Time (the "Voting Deadline"); and it is further

ORDERED that, in accordance with Bankruptcy Rule 3018(c), a hearing to consider confirmation of the Plan and any objections that may be interposed (the "Confirmation Hearing") shall be held before the Honorable Robert D. Drain, United States Bankruptcy Judge,

at the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, Room 610, commencing on June 8, 2009 at [__]:[__] [__].m., Prevailing Eastern Time; and it is further

ORDERED that the Confirmation Hearing may be adjourned from time to time without further notice other than announcement made at the Confirmation Hearing or any adjourned hearing; and it is further

ORDERED that, in accordance with Bankruptcy Rules 3020(b) and 9006(c)(1), objections, if any, to the confirmation of the Plan (collectively, the "Plan Objections") must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court, set forth the basis for the objection and the specific grounds therefor, and be filed with the Bankruptcy Court electronically in accordance with General Order M-242, as amended by General Order M-269, by registered users of the Bankruptcy Court's electronic case filing system (the User's manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), with a hard copy delivered directly to Chambers and served in accordance with General Order M-242 or by first-class mail upon each of the following: (i) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attention: Larren M. Nashelsky, Esq.; (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, New York, New York 10004, Attention: Paul K. Schwartzberg, Esq.; (iii) Bingham McCutchen LLP, 399 Park Avenue, New York, New York 10022-4689, Attn: Michael J. Reilly, Esq., counsel to the Creditors' Committee; and (iv) all parties that have, pursuant to Bankruptcy

Rule 2002, formally appeared and requested service, so as to be received on or before **4:00 p.m. (prevailing Eastern time) on [June 1, 2009] (the "Plan Objection Deadline")**; and it is further

ORDERED that pursuant to Bankruptcy Rules 3017(c) and 3018(a), the date for purposes of determining the creditors entitled to vote on the Plan or, in the case of non-voting classes, for purposes of determining the creditors and equity interest holders entitled to receive certain non-voting materials shall be [May [___], 2009] (the "Record Date"); and it is further

ORDERED that with respect to the Record Date, the record holders of claims will be determined based upon the following: (a) with respect to holders of equity securities entitled to vote on the Plan, the records of the relevant transfer agent, as well as the records of The Depository Trust Company ("DTC") and the applicable broker, dealer or other agents or nominees (collectively, the "Voting Nominees") as of the Record Date; and (b) with respect to holders of scheduled and filed claims entitled to vote on the Plan, the records of AlixPartners as of the Record Date; and it is further

ORDERED that any notices of claim transfers received by the record holders of the equity securities, AlixPartners or other similarly situated registrars after the Record Date shall not be recognized for purposes of voting; and it is further

ORDERED that the following voting procedures (the "Voting Procedures") are hereby approved:

  a.   if a claim is deemed allowed pursuant to the Plan, then such claim shall be allowed for voting purposes in the amount and classification deemed allowed in the Plan;

  b.   except as otherwise provided herein and unless temporarily allowed for voting purposes by the Court, if a filed proof of claim asserts a claim in a wholly undetermined or unliquidated amount or is docketed in the Claims Registry as of the Record Date (as defined herein) in the amount of $0, then such claim shall be allowed for voting purposes as a General Unsecured Claim only in the amount of $1.00;

c.      except as otherwise provided herein and unless temporarily allowed for voting purposes by the Court, if a filed proof of claim asserts a claim in a partially undetermined or unliquidated amount, then such claim shall be allowed for voting purposes only in the amount of the known or liquidated portion of the claim;

d.      if a claim has been estimated by an order of the Court, then such claim will be allowed for voting purposes in the amount approved by the Court, provided that such order is entered on or before such date and time set forth in the Disclosure Statement order, Prevailing Eastern Time (the "Voting Deadline");

e.      unless temporarily allowed for voting purposes by the Court or the Debtors have consented in writing, if a claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable Bar Date for the filing of proofs of claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, then such claim shall be disallowed for voting purposes;

f.      notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to the entirety of a claim on or before the date of the entry of the Disclosure Statement order and (ii) the claim has not been temporarily allowed for voting purposes by the Court, then such claim shall be disallowed for voting purposes;

g.      notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to a portion of a claim or equity interest on or before the date of the entry of the Disclosure Statement order and (ii) such portion of the claim or equity interest has not been temporarily allowed for voting purposes by the Court, then the claim shall be allowed for voting purposes only in the undisputed amount that is set forth in the pending objection;

h.      notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to the classification of all or part of a claim on or before the date of the entry of the Disclosure Statement order (including any requests to subordinate such claim) and (ii) such claim

has not been temporarily allowed for voting purposes by the Court, then the claim shall be allowed for voting purposes only in the amount and classification that is set forth in the pending objection (if any);

i.      unless such claim has been temporarily allowed for voting purposes by the Court or otherwise allowed as to all or part of the claim, if the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to a proof of claim based upon the claim being asserted against the wrong debtor, then the claim shall be allowed for voting purposes only in the undisputed amount and against the Debtor as set forth in the pending objection;

j.      unless otherwise provided by an order of the Court, the allowed amount of any proof of claim for voting purposes shall be the amount as docketed in the Claims Registry as of the Record Date;

k.      unless otherwise provided by an order of the Court or otherwise provided herein, for purposes of determining eligibility to vote, the classification of a claim shall be determined based on the classification as docketed in the Claims Registry as of the Record Date; provided, however, that any claims for which KCC is unable to identify the classification shall be classified as General Unsecured Claims;

l.      unless temporarily allowed for voting purposes by the Court, if a single proof of claim has been filed against multiple Debtors (in contravention of the Bar Date Notice), then such claim shall be allowed for voting purposes only against the Debtor as docketed in the Claims Registry as of the Record Date;

m.      if a claim is allowed pursuant to a Court-approved settlement (except for a claim or equity interest that is temporarily allowed by the Court, which claim may vote so long as such order temporarily allowing the claim is entered by the Voting Deadline) on or before ten (10) days prior to the Voting Deadline, then such claim will be entitled to vote on the Plan in accordance with the terms of such settlement;

n.      unless temporarily allowed for voting purposes by the Court, if (i) a proof of claim was filed after the applicable Bar Date, (ii) the creditor did not obtain leave to file such

late claim, and (iii) the proof of claim is not docketed in the Claims Registry as of the Record Date as an amendment of a timely filed claim, then such claim shall be disallowed for voting purposes;

o.    unless otherwise temporarily allowed for voting purposes by the Court, if a proof of claim does not list a Debtor or the Debtor is unidentifiable on the proof of claim, then such claim shall be disallowed for voting purposes;

p.    unless otherwise temporarily allowed for voting purposes by the Court, if a claim is disallowed pursuant to section 502(d) of the Bankruptcy Code or is equitably subordinated under the Bankruptcy Code, then such claim shall be disallowed for voting purposes;

q.    if the Debtors schedule a claim and the creditor filed a proof of claim superseding such scheduled claim, the scheduled claim is deemed superseded in accordance with Bankruptcy Rule 3003(c)(4) and such scheduled claim shall be disallowed for voting purposes; and

r.    in addition to the foregoing, the Debtors may seek an order of the Court disallowing a claim for voting purposes at anytime prior to the commencement of the Confirmation Hearing; and it is further

ORDERED that the forms of Ballots substantially in the form attached hereto as collective Exhibits "A-1" and "A-2" are approved; and it is further

ORDERED that with respect to holders of Noteholder Claims entitled to vote directly on the Plan, the Debtors shall solicit votes through the applicable Voting Nominees for the ultimate beneficial holders of the claims or interests (collectively, the "Beneficial Holders"); and it is further

ORDERED that the Voting Nominees for Noteholder Claims have the following two options with respect to voting the Ballots and Master Ballots attached hereto as Exhibits "A-1" and "A-2," respectively: (a) the Voting Nominee can forward the Solicitation Package to each Beneficial Holder (containing the Ballot set forth in Exhibit "A-1" hereto) entitled to vote on the

Plan within five (5) business days of the receipt by such Voting Nominee of the Solicitation Package and include a return envelope provided by, and addressed to, the Voting Nominee to enable the Beneficial Holder to return the completed Ballot to the Voting Nominee, with the Voting Nominee then tabulating the votes and submitting a Master Ballot (Exhibit "A-2" hereto) to the Solicitation and Tabulation Agent; or (b) if applicable under the governing documents, the Voting Nominee can "pre-validate" the Ballots and forward the Solicitation Package (containing Ballots set forth in Exhibit "A-1" hereto) to each Beneficial Holder entitled to vote on the Plan within five (5) business days of the receipt by such Voting Nominee of the Solicitation Package and include a return envelope postage pre-paid provided by, and addressed to, the Solicitation and Tabulation Agent; and it is further

ORDERED that the Debtors shall use the form of Ballot attached as Exhibit "A-1" hereto — Class 3 (Noteholder Claims) — to enable Voting Nominees to solicit the votes of Beneficial Holders in those instances where the role of the Voting Nominee is to submit the Beneficial Holders' voting information to the Solicitation and Tabulation Agent (either directly through a Master Ballot (Exhibit "A-2" hereto) or indirectly through pre-validation of the Ballots); and it is further

ORDERED that unless otherwise instructed in writing by a Voting Nominee, the Debtors shall provide each Voting Nominee with a reasonably sufficient number of Solicitation Packages (including Ballots) to distribute to the Beneficial Holders of the Noteholder Claims for whom such Voting Nominee acts; and it is further

ORDERED that, with the exception of members of the Committee, the Noteholder Steering Committee and the Ad Hoc Noteholder Group who have agreed pursuant to the Noteholder Settlement to grant the Releases contained in Section 7.14 of the Plan, each

holder of a Noteholder Claim entitled to vote on the Plan shall be allowed to make the Opt-Out

Election; provided, however, that failure to make such Opt-Out Election shall result in the

deemed consent of such holder to the releases contained in Section 7.14 of the Plan to the fullest

extent permitted by applicable law; and it is further

ORDERED that following approval of the Disclosure Statement, the Debtors shall

distribute or cause to be distributed solicitation packages (the "Solicitation Packages")

containing copies of the following:

a. the Disclosure Statement Order;

b. the applicable Ballot(s), substantially in the forms attached hereto as Exhibits "A-1" and "A-2," together with the voting instructions, substantially in the forms attached hereto as Exhibit "B," and a pre-addressed postage pre-paid return envelope; and

c. the applicable confirmation hearing notice, substantially in the form attached hereto as Exhibits "C" and "D" (the "Confirmation Hearing Notice");

d. either (i) a CD-ROM containing the Disclosure Statement (together with the Plan attached thereto) or (ii) a hard copy of the Disclosure Statement (together with the Plan attached hereto).

ORDERED that the Debtors shall mail the Solicitation Packages by no later than

five (5) business days after entry of this Order (the "Solicitation Date") to:

a. subject to subsection (c) below, record holders of scheduled claims, as of the Record Date, to the extent that such claims (i) are listed in the Debtors' Schedules in an amount greater than zero and are not identified as contingent, unliquidated or disputed, (ii) have not been superseded by a timely filed claim, and (iii) entitle the holder thereof to vote on the Plan;

b. subject to subsection (c) below, record holders of timely filed claims, as of the Record Date, to the extent that such claims (i) are the subject of timely filed proofs of claim, (ii) have not been disallowed, expunged, disqualified or

suspended prior to the Record Date, (iii) are not the subject of a pending objection as of the date set forth in the Disclosure Statement Order unless, notwithstanding being the subject of an objection, the Voting Procedures entitle such claimant to vote on the Plan in the manner set forth in the Voting Procedures, and (iv) entitle the holders thereof to vote on the Plan;

c. with respect to debt securities, the record holders of claims or equity securities, as of the Record Date, to the extent that the holders of such debt security claims are entitled to vote on the Plan; and

d. all parties requesting notice pursuant to Bankruptcy Rule 2002 and any taxing authorities to which the Debtors' operations are subject; and it is further

ORDERED that if service by CD-ROM imposes a hardship for any creditor (e.g., the creditor does not own or have access to a computer or the Internet), the Debtors, upon written request, shall deliver by first class mail a paper copy of the Plan and Disclosure Statement at no cost to the creditor or equity holder within five (5) business days of receipt of such request; and it is further

ORDERED that the Voting Nominees shall distribute Solicitation Packages to the respective Beneficial Holders within five (5) business days of the Voting Nominee's receipt of the Solicitation Packages; and it is further

ORDERED that the Debtors shall distribute or cause to be distributed by the Solicitation Date, the Solicitation Package without a (i) Ballot, (ii) voting instructions or (iii) return envelope to (a) the U.S. Trustee; (b) the attorneys for the Creditors' Committee; (c) the attorneys for the Noteholder Steering Committee; (d) the attorneys for the Ad Hoc Noteholder Group; (e) the Securities and Exchange Commission; (f) the District Director of the Internal Revenue Service; (g) the Department of Justice; and (g) all counterparties to the Debtors' executory contracts and unexpired leases; and it is further

ORDERED that the Debtors are authorized to reimburse any reasonable and customary out-of-pocket expenses incurred by DTC, brokerage firms or transfer agents in connection with the distribution of the Solicitation Packages; and it is further

ORDERED that the Debtors shall be excused from distributing Solicitation Packages to those entities listed at addresses to which undeliverable mailings were previously sent, unless the Debtors receive written notice of accurate addresses for such entities prior to the hearing to consider approval of the proposed Disclosure Statement; and it is further

ORDERED that the following additional procedures with respect to the solicitation of votes on the Plan are hereby approved:

- Publication Notice:

    Not less than [twenty (20)] days prior to the Plan Objection Deadline, the Debtors will cause the Confirmation Hearing Notice to be published once in The New York Times (National Edition). Additionally, the Debtors will publish the Confirmation Hearing notice electronically at http://www.kccllc.net/PaperInternational.

- Return of Ballots:

    Each claimant that has a Claim for which a Claim amount may be determined and which Claim is not treated as unimpaired under the Plan as of the Voting Deadline is entitled to vote to accept or reject the Plan. All Ballots will be accompanied by return postage pre-paid envelopes addressed to the Debtors' tabulation center (the "Ballot Tabulation Center"), with the exception of any Beneficial Holder Ballot, which must be returned as outlined in the applicable Ballot. All Ballots, except for Beneficial Holder Ballots, must be actually received at the Debtors' Ballot Tabulation Center by the Voting Deadline. Beneficial Holder Ballots that are not pre-validated must be returned to the Voting Nominee in sufficient time for the Voting Nominee to process the Beneficial Holder Ballots and return the Master Ballot to the Debtors' Ballot Tabulation Center by the Voting Deadline. If Ballots and Master Ballots are not actually received at the Debtors' Ballot Tabulation Center by the Voting Deadline, they will not be counted.

- <u>Solicitation and Tabulation Agent:</u>

  The Debtors will be using AlixPartners for purposes of distributing Solicitation Packages and tabulating votes on the Plan. The Solicitation and Tabulation Agent will be responsible for the distribution of Solicitation Packages to, and tabulation of Ballots received from, the entities such agents solicited.

- <u>Inquiries:</u>

  All inquiries related to the Plan, the Disclosure Statement, and the Voting Procedures should be directed to the Solicitation and Tabulation Agent at the phone number set forth on the appropriate Ballot; and it is further

ORDERED that the Debtors shall send to holders of unimpaired claims in Class 1 (Priority Claims), Class 2 (General Unsecured Claims), and Class 4 (Equity Interests) a notice of nonvoting status, substantially in the form attached hereto as Exhibit "D" (the "Notice of Non-Voting Status – Unimpaired Classes"), which identifies the classes designated as unimpaired, informs the claimant of the Confirmation Hearing date and the Plan Objection Deadline, and sets forth that a copy of the Plan and Disclosure Statement may be obtained <u>via</u> the Internet at http://www.deb.uscourts.gov and http://www.kccllc.net/PaperInternational, or CD-ROM upon written request to the Debtors, as therein provided; and it is further

ORDERED that the Notice of Non-Voting Status – Unimpaired Classes satisfies the requirements of Bankruptcy Rule 3017(d), and accordingly, copies of the Disclosure Statement and exhibits thereto, including the Plan, which is attached as Exhibit "A" to the Disclosure Statement, need not be mailed to any holder of an unimpaired claim unless such party makes a specific request in writing for the same; and it is further

ORDERED that the following procedures (the "Tabulation Procedures") are hereby approved:

a.    Votes will be tabulated both on an individual debtor basis for each relevant class and on a consolidated basis for each relevant class.

b.      A vote shall be disregarded if the Court determines, after notice and a hearing, that a vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

c.      Any Ballot that is returned to the Solicitation and Tabulation Agent, but which is unsigned, or has a non-original signature, shall not be counted, unless otherwise ordered by the Court.

d.      All votes to accept or reject the Plan must be cast by using the appropriate Ballot and in accordance with the voting instructions and/or as set forth on the Ballot (as may be applicable). Votes that are cast in any other manner shall not be counted, unless otherwise ordered by the Court.

e.      If multiple Ballots are received for a holder of claims voting the same claims, the last Ballot received, as determined by the Solicitation Agent or the Tabulation Agent, as the case may be, from such holder prior to the Voting Deadline will be the Ballot that is counted.

f.      If multiple Ballots are received from different holders purporting to hold the same claim, in the absence of contrary information establishing which claimant or holder held such claim as of the Record Date, the last Ballot received prior to the Voting Deadline will be the Ballot that is counted.

g.      If multiple Ballots are received from a holder of a claim and someone purporting to be his, her, or its attorney or agent, the Ballot received from the holder of the claim will be the Ballot that is counted, and the vote of the purported attorney or agent will not be counted, unless otherwise ordered by the Court.

h.      A Ballot that is completed, but on which the claimant did not indicate whether to accept or reject the Plan or that indicates both an acceptance and rejection of the Plan shall not be counted, unless otherwise ordered by the Court.

i.      Any Ballot (except a Master Ballot) that partially accepts and partially rejects the Plan shall not be counted, unless otherwise ordered by the Court.

j.      A holder of claims shall be deemed to have voted the full amount of its claim and shall not be entitled to split its vote.

k. The Solicitation and Tabulation Agent shall not tabulate a vote by facsimile, telecopy transmission or electronic mail, unless otherwise ordered by the Court.

l. For the purpose of voting on the Plan, the Solicitation and Tabulation Agent will be deemed to be in constructive receipt of any Ballot timely delivered to any address or designee that the Solicitation and Tabulation Agent designates for the receipt of Ballots cast on the Plan; and it is further

ORDERED that any entity entitled to vote to accept or reject the Plan may change its vote before the Voting Deadline by casting a superseding Ballot so that the superseding Ballot is received by the Solicitation and Tabulation Agent on or before the Voting Deadline; and it is further

ORDERED that unless otherwise agreed to by the Debtors upon notice to the Committees, entities desiring to change their votes after the Voting Deadline may do so only with approval of the Court for "cause" pursuant to Bankruptcy Rule 3018(a) by filing a motion with the Court on or before the Plan Objection Deadline so that it may be heard and considered at the Confirmation Hearing; and it is further

ORDERED that with respect to Master Ballots submitted by Voting Nominees and/or pre-validated Ballots submitted by or through the Voting Nominees, the Court directs the following:

a. all Voting Nominees to which Beneficial Holders return their Ballots shall summarize on the Master Ballot all Ballots cast by the Beneficial Holders and return the Master Ballot to the Solicitation and Tabulation Agent; provided, however, that each Voting Nominee shall be required to retain the Ballots cast by the respective Beneficial Holders for inspection for a period of at least one (1) year following the Voting Deadline;

b. votes cast by the Beneficial Holders through a Voting Nominee by means of a Master Ballot or pre-validated Ballot shall be applied against the positions held by such

Voting Nominee as evidenced by a list of record holders provided by DTC and compiled as of the Record Date; provided, however, that votes submitted by a Voting Nominee on a Master Ballot or pre-validated Ballot shall not be counted in excess of the position maintained by such Voting Nominee as of the Record Date;

c.    to the extent that there are over-votes submitted by a Voting Nominee, whether pursuant to a Master Ballot or pre-validated Ballot, the Solicitation and Tabulation Agent will attempt to reconcile discrepancies with the Voting Nominee;

d.    to the extent that over-votes on a Master Ballot or pre-validated Ballot are not reconciled prior to the preparation of the vote certification, the Solicitation and Tabulation Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept or reject the Plan submitted on the Master Ballot or pre-validated Ballot that contained the over-vote, but only to the extent of the position maintained by such Voting Nominee as of the Record Date;

e.    multiple Master Ballots may be completed by a single Voting Nominee and delivered to the Solicitation and Tabulation Agent and such votes shall be counted, except to the extent that such votes are inconsistent with or are duplicative of other Master Ballots, in which case the latest dated Master Ballot received before the Voting Deadline shall supersede and revoke any prior Master Ballot; and

f.    each Beneficial Holder shall be deemed to have voted the full amount of its claim, notwithstanding anything to the contrary in the Ballot submitted by such Beneficial Holder; and it is further

ORDERED that the Debtors shall provide to all creditors and equity security holders as of the Record Date a copy of either of the following notices, to be sent contemporaneously with the Solicitation Packages, (i) the Confirmation Hearing Notice, setting forth (a) the date of approval of the Disclosure Statement; (b) the Record Date; (c) the Voting Deadline; (d) the Plan Objection Deadline; and (e) the time, date, and place for the Confirmation Hearing, or (ii) the Notice of Non-Voting Status, setting forth (a) the date of approval of the

Disclosure Statement; (b) the Plan Objection Deadline; and (c) the time, date, and place for the Confirmation Hearing; and it is further

ORDERED that the Debtors shall publish the Confirmation Hearing Notice, not less than [twenty (20)] days before the Plan Objection Deadline in <u>The New York Times</u> (National Edition); the Debtors shall also publish the Confirmation Hearing Notice electronically at <u>http://www.deb.uscourts.gov</u> and <u>http://www.kccllc.net/PaperInternational</u>; and it is further

ORDERED that the forms of notice of the Confirmation Hearing in substantially the forms attached hereto as Exhibits "C" and "D" are hereby approved; and it is further

ORDERED that the Debtors and the Committee, and their respective officers, directors, members, and professionals, shall be and hereby are entitled to and afforded the protections of section 1125(e) of the Bankruptcy Code in connection with any actions they take pursuant to and consistent with this Order and section 1125(e), including, but not limited to, the issuance of letters recommending that holders of claims vote in favor of and support confirmation of the Plan; and it is further

ORDERED that the provision of notice in accordance with the procedures set forth in this Order shall be deemed good and sufficient notice of the Confirmation Hearing, the Voting Deadline and the Confirmation Objection Deadline; and it is further

ORDERED that this Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or in relation to the implementation of this Order.


Dated:  May _____, 2009
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit "A-1"
# Ballot

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PAPER INTERNATIONAL, INC., *et al.*, | ) | Case No. 08-13917 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### BENEFICIAL OWNER BALLOT FOR HOLDERS OF CLASS 3 NOTEHOLDER CLAIMS

PLEASE TAKE NOTICE that on May 15, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the Disclosure Statement relating to the Joint Chapter 11 Plan of Reorganization for the Debtors Proposed by Corporación Durango S.A.B. de C.V. ("Durango") and the Debtors, dated April 27, 2009 (the "Disclosure Statement") in the above-captioned jointly administered chapter 11 cases (the "Cases") of the above-captioned debtors (the "Debtors") in soliciting acceptances or rejections of the Joint Chapter 11 Plan of Reorganization for Proposed by Durango and the Debtors, dated April 27, 2009 (the "Plan") from those holders of impaired claims who are entitled to vote under the Plan. Capitalized terms used herein without definition have the meanings set forth in the Plan.

This Beneficial Owner Ballot (the "Ballot") is being sent to you as the beneficial owner of the Notes issued by the Debtors (the "Beneficial Owner"). As such, you are the holder of a Claim against the Debtors in Class 3 under the Plan.

The Plan will be accepted by Class 3 – Noteholder Claims if it is accepted by the holders of two-thirds in amount and more than one-half in number of the Noteholder Claims in Class 3 that vote on the Plan. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against and Interests in the Debtors (including those who abstain or reject the Plan, and those who are not entitled to vote on the Plant) will be bound by the confirmed Plan and the transactions contemplated thereby. To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 4:00 P.M. (Prevailing Eastern Time) On June 1, 2009**

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote
To Be Processed By the Nominee And Voted On A Master Ballot Before The Voting Deadline**

---

**IMPORTANT**

**YOU SHOULD REVIEW THE DISCLOSURE STATEMENT AND THE PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND YOUR CLASSIFICATION AND TREATMENT UNDER THE PLAN. YOUR CLAIM HAS BEEN PLACED IN CLASS 3 UNDER THE PLAN.**

**PLEASE READ CAREFULLY AND FOLLOW THE ATTACHED INSTRUCTIONS FOR RETURNING YOUR BALLOT. THE VOTING DEADLINE BY WHICH YOUR VOTE MUST BE RECEIVED BY THE TABULATION AGENT IS *4:00 P.M. (PREVAILING EASTERN TIME), ON JUNE 1, 2009* OR THE VOTES REPRESENTED BY YOUR BALLOT WILL *NOT* BE COUNTED. IF YOU HAVE ANY QUESTIONS, PLEASE CALL THE TABULATION AGENT, ALIXPARTNERS LLC, AT (214) 647-7500. IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR FINANCIAL INSTITUTION, PLEASE ALLOW SUFFICIENT TIME FOR YOUR FINANCIAL INSTITUTION TO PROCESS YOUR VOTE.**

---

Please note that you must vote the entire claim you hold to accept or reject the Plan. For purposes of tabulating the votes, you will be deemed to have voted the full amount of your claim in your vote. You may not split your vote. If you are submitting a vote with respect to any Notes that you own, you must vote all of your Notes in the same way (*i.e.*, all "Accepts" or "Rejects"). To the extent that you are voting on behalf of the actual Beneficial Owner, you must provide the name and address of the Beneficial Owner on this Ballot and may be required to submit evidence to the Debtors and the Bankruptcy Court demonstrating your authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner <u>must</u> complete a separate Ballot for each owner.

You may receive multiple mailings containing Ballots, especially if you own Notes through more than one bank, broker or agent thereof (each, a "Nominee"). You should vote each Ballot that you receive for all of the Notes that you beneficially own.

You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**Item 1. Face Amount Of Note.** The undersigned hereby certifies that as of May 1, 2009, the voting record date (the "Record Date"), the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of Notes in the following aggregate unpaid principal amount (insert amount in box below). **(If your Notes are held by a Nominee on your behalf and you do not know the amount, please contact your Nominee immediately.)**

| $ |
|---|

**Item 2. Vote On Plan. (Please check one.)**

The undersigned:    ☐    ACCEPTS (votes FOR) the Plan.

                           ☐    REJECTS (votes AGAINST) the Plan.

**Item 3. Certification As To Notes Held in Additional Accounts.** By signing and returning this Ballot, the undersigned certifies that either (a) it has not submitted any other Ballots for Notes held in other accounts or other record names or (b) it has provided the information specified in the following table for all other Notes for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

### ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED
### BALLOTS OTHER THAN THIS BALLOT

| Name of Holder<br><br>(Insert your name if Notes are held by you in record name or, if held in street name, insert name of Nominee) | Account Number<br>(if applicable) | Principal Amount of<br>Other Notes Voted |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

**Item 4. Opt-Out Election.** Check this box if you elect not to grant the releases contained in Section 7.14 of the Plan as they relate to the opt-out release parties set forth in Section 7.14 of the Plan. Election to withhold consent is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Section 7.14 of the Plan to the fullest extent permitted by applicable law. The full text of Section 7.14 of the Plan is set forth at the end of this Ballot.

| ☐ | The undersigned elects not to grant the releases contained in Section 7.14 of the Plan. |
|---|---|

**Item 5. Authorization.** By returning this Ballot, the undersigned hereby certifies that it either (a) was on the Record Date, the registered or record holder and the Beneficial Owner of the Notes to which this Ballot pertains and is sending this Ballot directly to the Tabulation Agent or (b) if this Ballot was pre-validated by the Nominee holder, was on the Record Date, the Beneficial Owner of the Notes, but *not* the registered or record holder to which this pre-validated Ballot pertains and is sending this pre-validated Ballot directly to the Tabulation Agent, or (c) was on the Record Date the Beneficial Owner of the Notes, but *not* the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of, the undersigned with respect to, the Notes to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a master Ballot (a "Master Ballot") reflecting this Ballot and (ii) deliver such Master Ballot to the Tabulation Agent.

The undersigned further certifies that it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name of Holder:_____
(Print or Type)

Social Security or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

Name of Signatory:_____
(If Other than Holder)

Title (if corporation, partnership or LLC):_____
(If Appropriate)

Street Address:_____

City, State, Zip Code:_____

Telephone Number: (\_\_\_)_____

Date Completed:_____

The Debtors expressly reserves the right to extend, by oral or written notice to the Tabulation Agent, the Voting Deadline until properly completed Ballots and Master Ballots (that are not subsequently revoked) indicating acceptance of the Plan in sufficient number and amount to meet the voting requirements prescribed by Section 1126 of the Bankruptcy Code have been received.

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL OWNER BALLOT**

The Debtors are soliciting your vote on the Plan described in and attached as Appendix A to the Disclosure Statement accompanying this Ballot. Please review the Disclosure Statement and Plan carefully before you vote. Unless otherwise defined, capitalized terms used herein without definition have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and shall *not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity or amount of any claim. This Ballot is *not* a letter of transmittal and may *not* be used for any other purpose than to cast votes to accept or reject the Plan.** Holders should *not* surrender, at this time, certificates representing their Notes, and neither the Committee nor the Tabulation Agent will accept delivery of any certificates surrendered together with this Ballot. **DO NOT SUBMIT NOTES WITH THIS BALLOT.**

To ensure your vote is counted, you must complete, sign and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope provided. **Unsigned ballots will not be counted.** Ballots and Master Ballots must be received by the Tabulation Agent, AlixPartners LLP by 4:00 p.m. (Prevailing Eastern Time), on June 1, 2009 (the "Voting Deadline"). If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Tabulation Agent by the Voting Deadline. If a Ballot is received after the Voting Deadline, it will not be counted. Except as otherwise provided herein, such delivery will be deemed made only when the original executed Ballot or Master Ballot is actually received by the Tabulation Agent. In all cases, sufficient time should be allowed to assure timely delivery. Delivery of a Ballot by facsimile, e-mail or any other electronic means will not be accepted. No Ballot should be sent to the Debtors, any indenture trustee or any financial or legal advisor of the Debtors.

**If you believe that you have received the wrong Ballot, please contact the
Tabulation Agent, AlixPartners, LLC, at (214) 647-7500, or your Nominee immediately.**

To complete this Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted. If you do not know the face amount of your Notes, please contact your Nominee or the Noticing Agent immediately.

(b)  Cast your vote either to accept or reject the Plan by checking the proper box in Item 2. Ballots of holders of Notes that are signed and returned, but not expressly voted for acceptance or rejection of the Plan, will be counted as an acceptance.

(c)  Read Item 3 carefully.

(d)  Provide the information required by Item 3, if applicable to you.

(e)  Read Item 4 and Section 7.14 of the Plan printed below carefully and follow the directions above.

(f)  Read Item 5 carefully.

(g)  Sign and date this Ballot. (Applicable only if this Ballot has *not* been signed or "pre-validated" by your Nominee).

(h)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.

(i)  Provide your name and mailing address (i) if different from the printed address that appears on the Ballot or (ii) if no pre-printed address appears on the Ballot.

(j)  Return this Ballot using the enclosed return envelope.

PLEASE MAIL THIS BALLOT PROMPTLY:

# IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES PLEASE CALL THE TABULATION AGENT AT (214) 647-750

**7.14.  Releases by Noteholders.**

Upon the occurrence of the Effective Date, any holder of an Allowed Noteholder Claim will be presumed conclusively to have released the Debtors, the Reorganized Debtors, their non-Debtor affiliates, the Committee, the Noteholder Steering Committee and the Ad Hoc Noteholder Group, and each of their respective present and former officers and directors, their respective successors, assigns, and each of their respective agents, attorneys, advisors, accountants, restructuring consultants, financial advisors, and investment bankers, as well as the Debtors' officers, directors, and employees who hold such positions on the Confirmation Date and any Person claimed to be liable derivatively through any of the foregoing, from any Cause of Action based on the same subject matter as the Claim on which the Plan Distribution is received; provided, however, that nothing in this section shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order; provided further, however, that the foregoing releases shall not apply to any holder of a Noteholder Claim if such holder "opts out" of the releases provided in this Section 7.14 of the Plan by a timely written election pursuant to such holder's Ballot; provided further, however, that each member of the Committee, the Noteholder Steering Committee and the Ad Hoc Noteholder Group who has executed the Plan Support Agreement is presumed conclusively to have elected to provide this release irrespective of such member's Ballot.

# Exhibit "A-2"
# Master Ballot

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PAPER INTERNATIONAL, INC., *et al.*, | ) | Case No. 08-13917 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### MASTER BALLOT FOR RECORD HOLDERS OF CLASS 3 NOTEHOLDER CLAIMS

PLEASE TAKE NOTICE that on May 15, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the Disclosure Statement relating to the Joint Chapter 11 Plan of Reorganization for the Debtors Proposed by Corporación Durango S.A.B. de C.V. ("Durango") and the Debtors, dated April 27, 2009 (the "Disclosure Statement") in the above-captioned jointly administered chapter 11 cases (the "Cases") of the above-captioned debtors (the "Debtors") in soliciting acceptances or rejections of the Joint Chapter 11 Plan of Reorganization for Proposed by Durango and the Debtors, dated April 27, 2009 (the "Plan") from those holders of impaired claims who are entitled to vote under the Plan. Capitalized terms used herein without definition have the meanings set forth in the Plan.

This Master Ballot is being sent to registered or record holders, and banks, brokers and other nominees, of beneficial owners of notes (the "Beneficial Owners") issued pursuant to the Notes. Claims arising from or related to the Notes are Class 3-Noteholder Claims under the Plan and are classified in Class 3 of the Plan.

You are required to deliver a Beneficial Owner Ballot to each Beneficial Owner for whom you hold Notes along with the Disclosure Statement and other materials requested to be forwarded, and take any action required to enable such Beneficial Owner to timely vote its Notes to accept or reject the Plan. With regard to any Beneficial Owner Ballots returned to you, you must (1) execute this Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the Notes and (2) forward this Master Ballot to the Tabulation Agent. If you are both the registered or record holder <u>and</u> Beneficial Owner of any Notes and you wish to vote such Notes, you may complete a Beneficial Owner Ballot or this Master Ballot.

**PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. COMPLETE, SIGN AND DATE THIS MASTER BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME), ON JUNE 1, 2009 (THE "VOTING DEADLINE"), BY THE TABULATION AGENT, ALIXPARTNERS, LLC, 2100 MCKINNEY AVENUE, SUITE 800, DALLAS, TX 75201, TELEPHONE: (214) 647-7500. IF THIS MASTER BALLOT IS NOT COMPLETED, SIGNED AND TIMELY RECEIVED BY THE VOTING DEADLINE, THE VOTES SUBMITTED HEREBY WILL NOT BE COUNTED.**

**Item 1: Certification of Authority to Vote.** The undersigned certifies that as of May 1, 2009, the voting record date, the undersigned (please check applicable box):

☐     Is a bank, broker or other nominee for the Beneficial Owners of the aggregate principal amount of Notes listed in Item 2 below, and is the registered holder of such securities, or

☐     Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a bank, broker or other nominee that is the registered holder of the aggregate principal amount of Notes listed in Item 2 below, or

☐     Has been granted a proxy (an original of which is annexed hereto) from a bank, broker or other nominee, or a Beneficial Owner, that is the registered holder of the aggregate principal amount of Notes listed in Item 2 below.

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Notes described in Item 2.

**Item 2: Noteholder Claims (Class 3) Vote on Plan – Number of Beneficial Owners.** The undersigned certifies that the following Beneficial Owners of Notes, as identified by their respective customer account number or the respective sequence numbers set forth below, have delivered to the undersigned Beneficial Owner Ballots casting votes (indicate the aggregate face amount for reach respective account under the appropriate column) (please use additional sheets of paper if necessary):

| | Face Amount of Notes | | |
|---|---|---|---|
| | (In order to vote on the Plan, the Beneficial Owner must have checked a box in Item 2 on the Beneficial Owner Ballot to ACCEPT or REJECT the Plan. Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, please do not enter any vote in these columns.) | | |
| Customer Name and/or Account Number for Each Beneficial Owner of Notes | **To Accept (For) the Plan** | **To Reject (Against) the Plan** | **Check here if Beneficial Holder checked the box in Item 4 of the Ballot.** |
| 1. | $ | $ | |
| 2. | $ | $ | |
| 3. | $ | $ | |
| 4. | $ | $ | |
| 5. | $ | $ | |
| **TOTALS** | $ | $ | |

Please note that each Beneficial Owner of Notes who votes must vote all the Notes owned by such Beneficial Owner, for purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of Notes owned by such Beneficial Owner according to your records. A beneficial owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.  Additional Ballots Submitted by Beneficial Owners.** The undersigned certifies that it has transcribed below the information, if any, provided in Item 4 of each Beneficial Owner Ballot received from a Beneficial Owner.

| | TRANSCRIBE FROM ITEM 4 OF BENEFICIAL OWNER BALLOT | | |
|---|---|---|---|
| Your Customer Name and/or Account Number for each Beneficial Owner of Notes | Name of Holder | Account Number (if applicable) | Principal Amount of Other Notes Voted |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**Item 4.  Execution.**  By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has been provided with a copy of the Disclosure Statement (including the exhibits thereto).  The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name of Bank, Broker, or Other Nominee:

_____
(Print or Type)
Name of Proxy holder or Agent for Bank, Broker or Other Nominee:

_____
(Print or Type)
Social Security or Federal Tax I.D. No: _____
(If Applicable)
Signature: _____

By: _____
(If Appropriate)
Title: _____
(If Appropriate)

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

Date Completed: _____

Participant No.: _____

| VOTING DEADLINE |
|---|
| **THIS MASTER BALLOT MUST BE RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME), ON JUNE 1, 2009 BY THE TABULATION AGENT, ALIXPARTNERS, LLC, 2100 MCKINNEY AVENUE, SUITE 800, DALLAS, TX 75201, TELEPHONE: 214-647-7500 OR YOUR CUSTOMERS' VOTES WILL NOT BE COUNTED.** |

| ADDITIONAL INFORMATION |
|---|
| **IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THIS MASTER BALLOT, THE BENEFICIAL OWNER BALLOT OR THE OTHER ENCLOSED MATERIALS, PLEASE CALL THE TABULATION AGENT, ALIXPARTNERS, LLC, TELEPHONE: (214) 647-7500.** |

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

The Debtors are soliciting your customers' votes on the Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot. Please review the Disclosure Statement and Plan carefully before you complete this Master Ballot. Unless otherwise defined, capitalized terms used herein without definition have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign and return this Master Ballot so that it is RECEIVED by the Tabulation Agent, AlixPartners, LLC, by 4:00 p.m. (Prevailing Eastern Time), on June 1, 2009 (the "Voting Deadline"). **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

1.      If you are both the registered or record holder *and* the beneficial owner of any Notes and you wish to vote such Notes, you must complete a Beneficial Owner Ballot or a Master Ballot

2.      If you are transmitting the votes of any Beneficial Owner of Notes other than yourself, you may *either*:

(a)      Deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold Notes, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package") and a return envelope addressed to you, and take any action required to enable each such Beneficial Owner to (i) complete and execute such Beneficial Owner Ballot with a vote to accept or reject the Plan and (ii) return the completed, executed Beneficial Owner Ballot to you in sufficient time to enable you to complete this Master Ballot and deliver it to the Tabulation Agent prior to the Voting Deadline; **or**

(b)      Pre-validate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Beneficial Owner Ballot and by indicating on that Beneficial Owner Ballot the record holder of the Notes voted, the principal amount and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the Notes for voting so that the Beneficial Owner may return the completed Ballot directly to the Tabulation Agent in the return envelope provided in the Solicitation Package. With regard to any Beneficial Owner Ballots returned to you, you must (i) execute this Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold Notes and (ii) forward this Master Ballot to the Tabulation Agent.

3.      **To complete this Master Ballot properly, take the following steps:**

(a)      Vote to accept (for) or reject (against) the Plan in Item 2 for the Notes held by you as the nominee or proxy holder on behalf of the nominee or the Beneficial Owners.

(b)      Provide appropriate information for each of the items on this Master Ballot. Please note that Item 2 requests information for each individual Beneficial Owner for whom you are voting Notes. If you are unable to disclose the identity of such Beneficial Owners, please use the customer account number assigned by you to each such Beneficial Owner or, if no such customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and his or her assigned sequential number).

(c)      Fill in the information requested in Item 3 for each Beneficial Owner that completed Item 3 of Beneficial Owner Ballot, if applicable.

(d)      Read Item 4 carefully.

(e)      Sign and date this Master Ballot.

(f)      Provide your name and mailing address.

(g)      Deliver this Master Ballot to the Voting Agent by the Voting Deadline.

**PLEASE NOTE:**

No Beneficial Owner Ballot or Master Ballot shall constitute or be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity or amount of any claim.

**This Master Ballot is *not* a letter of transmittal and may *not* be used for any other purpose that to cast votes to accept or reject the Plan.**

No fees or commissions or other remuneration will be payable to any registered or record holder, bank, broker or other nominee, or any other person, for soliciting Beneficial Owner Ballots accepting the Plan. The Debtors will, however, upon request, reimburse you for customary mailing and handling expenses incurred by you in forwarding the Beneficial Owner Ballots and other enclosed materials to your customers.

The Debtors expressly reserve the right to extend, by oral or written notice to the Tabulation Agent, the Voting Deadline until properly completed Beneficial Owner Ballots and Master Ballots (that are not subsequently revoked) indicating acceptance of the Plan in sufficient number and amount to meet the voting requirements prescribed in Section 1126 of the Bankruptcy Code have been received.

---

NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL BE DEEMED TO CONSTITUTE YOUR OR ANY OTHER PERSON AS AN AGENT OF THE DEBTORS OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH

---

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE
VOTING PROCEDURES PLEASE CALL THE TABULATION AGENT AT (214) 647-7500

# Exhibit "B"
# Voting Instructions

**[To be inserted]**

# Exhibit "C"
# Confirmation Hearing Notice

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Lorenzo Marinuzzi

Attorneys for the Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PAPER INTERNATIONAL, INC., *et al.*, | ) | Case No. 08-13917 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### NOTICE OF HEARING TO CONSIDER CONFIRMATION OF, AND
### DEADLINE FOR OBJECTING TO, JOINT CHAPTER 11 PLAN

TO PARTIES IN INTEREST

PLEASE TAKE NOTICE THAT:

1.      On May 15, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved the Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization for the Debtors Proposed by Corporación Durango and the Debtors (the "Disclosure Statement") submitted by Corporación Durango and the above-captioned debtors (collectively, the "Debtors") in soliciting acceptances or rejections of the Joint Chapter 11 Plan of Reorganization for the Debtors Proposed by Corporación Durango and the Debtors (the "Plan").1

2.      In conjunction with approving the Disclosure Statement, the Bankruptcy Court entered an order (a) approving the dates, procedures and forms applicable to the process of soliciting votes on and providing notice of the Plan, (b) approving certain vote tabulation procedures, and (c) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan (the "Approval Order").

3.      A hearing to consider confirmation of the Plan will be held on June 8, 2009 at [__]:[__] [__].m. (Prevailing Eastern Time), before the Robert D. Drain, Judge of the Bankruptcy Court, in the United States Courthouse, at One Bowling Green, New York, NY 10004-1408.  The confirmation hearing may be adjourned from time to time by announcement in open court without written notice to parties in interest.

4.      No later than June 1, 2009, at [__]:[__] [__].m. (Prevailing Eastern Time), any and all objections to the Plan must be (a) filed with the office of the Clerk of the Bankruptcy Court, One Bowling Green, New York, NY 10004-1408, and (b) received by: (i) Larren M. Nashelsky, Esq., Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104; (ii) John K. Cunningham, Esq., White & Case LLP, Wachovia Financial Center, Suite 4900, 200 South Biscayne Boulevard, Miami, Florida 33131 ; (iii) Michael J. Reilly, Esq., Bingham McCutchen LLP, 399 Park Avenue, New York, New York  10022; (iv) Paul Kenan Schwartzberg, Esq., Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004; and (v) all other parties listed on

---

1        Capitalized terms used herein but not otherwise defined shall have the meanings ascribed thereto in the Plan.

the 2002 Service List (a copy of which may be obtained from counsel for the Debtors). The objections must be in writing, must state the name and address of the objecting party and the nature of the claim or interest of such party, and must state with particularity the basis and nature of any objection to or proposed modification of the Plan. Objections not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled.

5.      The Plan may be further modified, if necessary, pursuant to 11 U.S.C. § 1127, prior to, during, or as a result of the confirmation hearing, without further notice to the parties in interest.

6.      Copies of the Approval Order, the Disclosure Statement, and Plan are available at http://www.kccllc.net/PaperInternational or by contacting Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245.


Dated:    April 27, 2009
          New York, New York


                              Respectfully submitted,


                              /s/ Lorenzo Marinuzzi
                              Larren M. Nashelsky
                              Lorenzo Marinuzzi
                              MORRISON & FOERSTER LLP
                              1290 Avenue of the Americas
                              New York, New York 10104
                              Telephone: (212) 468-8000
                              Facsimile: (212) 468-7900

                              Attorneys for Debtors and Debtors in Possession

# Exhibit "D"
# Notice of Non-Voting Status

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Larren M. Nashelsky
Lorenzo Marinuzzi

*Attorneys for the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PAPER INTERNATIONAL, INC., *et al.*, | ) | Case No. 08-13917 (RDD) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

### NOTICE OF NON-VOTING STATUS UNDER CHAPTER 11 PLAN

TO:      HOLDERS OF ADMINISTRATIVE CLAIMS
            HOLDERS OF TAX CLAIMS
            HOLDERS OF PRIORITY CLAIMS (CLASS 1)
            HOLDERS OF GENERAL UNSECURED CLAIMS (CLASS 2)
            HOLDERS OF EQUITY INTERESTS (CLASS 4)

**PLEASE TAKE NOTICE THAT:**

1.      On May 15, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved the Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization for the Debtors Proposed by Corporación Durango and the Debtors (the "Disclosure Statement") submitted by Corporación Durango and the above-captioned debtors (collectively, the "Debtors") in soliciting acceptances or rejections of the Joint Chapter 11 Plan of Reorganization for the Debtors Proposed by Corporación Durango and the Debtors (the "Plan").[1]

2.      In conjunction with approving the Disclosure Statement, the Bankruptcy Court entered an order (a) approving the dates, procedures and forms applicable to the process of soliciting votes on and providing notice of the Plan, (b) approving certain vote tabulation procedures, and (c) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan (the "Approval Order").

3.      You are receiving this notice because you are believed to be the holder of an Administrative Claim, a Tax Claim, a Class 1 (Priority Claim), a Class 2 (General Unsecured Claim) or a Class 4 (Equity Interest), (collectively, the "Non-Voting Claims"). Under the Plan:

        An <u>Administrative Claim</u> is (i) a Claim incurred by a Debtor (or its Estate) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of title 11 of the United States Code (the "Bankruptcy Code"), including, without limitation, Fee Claims. As to Administrative Claims, the Plan provides: "*On the Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed*

---

[1]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed thereto in the Plan.

Administrative Claim; *provided, further, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business.*"

A <u>Tax Claim</u> is any Claim against either of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code. As to Tax Claims, the Plan provides: *"At the election of the Debtors, each holder of an Allowed Tax Claim shall receive in full satisfaction of such holder's Allowed Tax Claim, (a) the amount of such holder's Allowed Tax Claim, with Post-Confirmation Interest thereon, in equal annual Cash payments on each anniversary of the Effective Date, until the sixth (6th) anniversary of the date of assessment of such Tax Claim (provided that the Debtors may prepay the balance of any such Allowed Tax Claim at any time without penalty); (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed-upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim. The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are in compliance with this Section. So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this Section or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled."*

A <u>Class 1 - Priority Claim</u> is any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Claims and Tax Claims. As to Priority Claims, the Plan provides: *"Each holder of an Allowed Priority Claim shall be unimpaired under the Plan and such Allowed Priority Claims shall either be paid in full in Cash on the Effective Date or, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, except as provided in section 1124(2)(A)-(C) of the Bankruptcy Code, and the holders of such Allowed Priority Claims shall be paid in full in accordance with such reinstated rights, as and when such payment is due, provided that payment may be made by the Reorganized Debtors."*

A <u>Class 2 - General Unsecured Claim</u> is an Unsecured Claim other than a Noteholder Claim. As to General Unsecured Claims, the Plan provides: *"Each holder of an Allowed General Unsecured Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights of each holder of an Allowed General Unsecured Claim in respect of such Claim shall be fully reinstated and retained, except as provided in section 1124(2)(A)-(C) of the Bankruptcy Code, and the holders of such Allowed General Unsecured Claims shall be paid in full in accordance with such reinstated rights, as and when such payment is due, provided that payment may be made by the Reorganized Debtors."*

A <u>Class 4 - Equity Interest</u> is any outstanding ownership interest in either of the Debtors, including, without limitation, interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units, or other rights to purchase or otherwise receive any ownership interest in either of the Debtors and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation. As to Equity Interests, the Plan provides: *"On the Effective Date, each holder of an Allowed Equity Interest shall retain 100% of its legal and equitable ownership rights in such Equity Interest."*

4.      Because your claim or equity interest is unimpaired under the Plan, you are not entitled to vote on the Plan. Nevertheless, you are a party in interest to the Debtors' chapter 11 cases and are entitled to participate in the Debtors' chapter 11 cases.

5.      A hearing to consider confirmation of the Plan will be held on June 8, 2009 at [__]:[__] [__].m. (Prevailing Eastern Time), before the Robert D. Drain, Judge of the Bankruptcy Court, in the United States Courthouse, at One Bowling Green, New York, NY 10004-1408. The confirmation hearing may be adjourned from time to time by announcement in open court without written notice to parties in interest.

6.      No later than June 1, 2009, at [__]:[__] [__].m. (Prevailing Eastern Time), any and all objections to the Plan must be (a) filed with the office of the Clerk of the Bankruptcy Court, One Bowling Green, New York, NY 10004-1408, and (b) received by: (i) Larren M. Nashelsky, Esq., Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104; (ii) John K. Cunningham, Esq., White & Case LLP, Wachovia Financial Center, Suite 4900, 200 South Biscayne Boulevard, Miami, Florida 33131; (iii) Michael J. Reilly, Esq., Bingham McCutchen LLP, 399 Park Avenue, New York, New York  10022; (iv) Paul Kenan Schwartzberg, Esq., Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004; and (v) all other parties listed on the 2002 Service List (a copy of which may be obtained from counsel for the Debtors). The objections must be in writing, must state the name and address of the

objecting party and the nature of the claim or interest of such party, and must state with particularity the basis and nature of any objection to or proposed modification of the Plan. Objections not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled.

7.       The Plan may be further modified, if necessary, pursuant to 11 U.S.C. § 1127, prior to, during, or as a result of the confirmation hearing, without further notice to parties in interest.

8.       Copies of the Approval Order, the Disclosure Statement, and Plan are available at http://www.kccllc.net/PaperInternational or by contacting Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245.

Dated:     April 27, 2009
          New York, New York

                        Respectfully submitted,

                        /s/ Lorenzo Marinuzzi
                        Larren M. Nashelsky
                        Lorenzo Marinuzzi
                        MORRISON & FOERSTER LLP
                        1290 Avenue of the Americas
                        New York, New York 10104
                        Telephone: (212) 468-8000
                        Facsimile: (212) 468-7900

                        Attorneys for Debtors and Debtors in Possession